ST. LOUIS, I. M. & S. RY. CO. v. STATE.

No. 1171.    Opinion Filed May 10, 1910.

On Rehearing September 27, 1910, and March 21 1911.

(111 Pac. 396; 114 Pac. 1096.)

1.    CORPORATION COMMISSION—Reasonableness of Orders—Review—Presumptions. The prima facie presumption of the reasonableness, justness, and correctness of an order of the Corporation Commission, obtaining by reason of section 22. art. 9, Const. applies only to the facts found by the commission, or established by evidence upon which the commission failed to make a finding; and, where a fact material to the reasonableness, justness, and correctness of an order is lacking in the finding of facts made by the commission, and is not supplied by the evidence, the presumption obtaining by reason of said section does not apply, and, on review in this court, such order cannot be sustained.

2.    RAILROADS—Depots—Improvement—Authority of Corporation Commission. A railway company is ordered by the Corporation Commission to remove from its present site a frame depot building which for 19 years it has been using for freight and pas-.senger business, and to replace it with a modern structure to

be built according to plans and specifications to be approved by the commission, giving as its opinion in its findings that one month's income from that station, freight and passenger, amounting to $25,000, would be a reasonable amount to be expended. The company, conceding that its present facilities are inadequate, has constructed a separate freight depot, and offers to remodel the present frame structure by enlarging the passenger accommodations making them adequate to meet all the demands of the station, heat and light it with gas, and to make it a comfortable depot for the use of its patrons, all of which it claims to be able to do at an expense of $600 to $700. This offer is by the commission rejected. Held that, under section 26 of article 9 of the Constitution, railway companies are required to provide and maintain adequate, comfortable, and clean depots and depot buildings at their several stations for the accommodation of passengers, which are to be kept well lighted and warmed for the comfort and accommodation of the traveling public, and the Corporation Commission of the state, while having plenary authority to enforce these provisions, cannot reject and require the removal of a depot building which meets or which a company offers to make meet these requirements, and arbitrarily order a new and comparatively expensive building erected in its place.

3. **CORPORATION COMMISSION—Review of Orders—Remand for More Evidence.** The Supreme Court may, when it deems it necessary, in the interest of justice, remand to the Corporation Commission any case pending on appeal in said court, and require the same to be further investigated by the commission and reported upon, and such additional evidence as may be tendered thereon before said commission by any party in interest to be certified to said court before such appeal is finally determined.

(Syllabus by the Court.)

*Appeal from Corporation Commission.*

Action by the State against the St. Louis, Iron Mountain & Southern Railway Company. From the judgment, the railway company brings error. Reversed and remanded for further evidence.

*Lovick P. Miles,* for plaintiff in error.—Citing *Atlantic C. L. R. Co. v. N. C. Corp. Com.,* 206 U. S. 1, and *Mo. Pac. Ry. Co. v. Kansas ex rel.,* U. S. Sup. Ct. Reports, April 1, 1910.

*Chas. West,* Atty. Gen., and *Geo. A. Henshaw,* Asst. Atty. Gen. (*J. A. Tillotson,* of counsel), for the State.

DUNN, C. J. This case presents an appeal from an order of the Corporation Commission of the state, requiring the plaintiff in error, the St. Louis, Iron Mountain & Southern Railway Company, to remove from the confines of the city of Nowata, a station on its line and the county seat of Nowata county, Okla., certain stockpens maintained by the company therein, and to prepare plans and specifications for a passenger depot to be submitted to the commission for its approval by October 1, 1909, and providing that the depot shall be built where the present depot is now located, and shall be of such size and capacity as may be determined by the commission upon the submission of the plans and specifications referred to. There were several other provisions contained in the order from which the appeal is taken, but the company has complied with them, and these mentioned are the only ones before us for our consideration.

The stockpens were constructed at a time when Nowata was a village. It is now a city of approximately 5,500 people, and has grown out and around the said pens until they are now located within about a block of the business center of the city, so that shippers of stock are required to drive their herds through the streets of the city to avail themselves of the said pens. The order of the commission directs that they be removed from their present location and re-established at some convenient point to be agreed upon and there be rebuilt of sufficient size and dimensions to hold not less than 300 head of cattle. We have carefully read the briefs filed by counsel and considered the evidence shown in the record in reference to their removal, and are convinced that the order requiring removal, relating as it does to the convenience of shippers of cattle, is fully sustained and reasonable and just. The evidence shows that the stockpens are not accessible except by driving through the business or residence portions of the city, and that by removing them the conditions which this situation would obviously produce could be relieved. The evidence shows, however, that during the 12 months preceding the hearing of this case only 69 cars of stock had been shipped from that station, and that this num-

ber included both cattle and hogs, the latter of which were not loaded at the stockpens. Counsel for appellee in their brief state in reference to the size of the stockpen mentioned in the order that the commission had in mind a pen of sufficient size to hold a train load of cattle at one time, and that, if the court finds from the evidence that the size of the stockpens indicated by the commission's order is unreasonable, the court may confirm the order as to such sized pen as may seem proper. The record does not disclose that the commission heard any evidence showing what would be reasonable and what would be unreasonable in reference to the size of the stockpens ordered. If there were but 69 cars of cattle shipped during the past year, and if these cars were gathered and shipped one at a time, and this condition was not brought about either by the size or location of the pens, then clearly under such circumstances stockpens which would hold a car of cattle would probably be sufficient. There is no evidence that more than one car of cattle was offered at one time, nor is there any evidence that it would be necessary to construct stockpens of sufficient size to hold a train load of cattle, and an order which arbitrarily requires such an extraordinary convenience cannot be held *prima facie* reasonable and just where there is a total want of evidence to support it. It was said by this court in the case of *St. L. & S. F. R. Co. v. Newell et al.*, 25 Okla. 502, 106 Pac. 818, in the syllabus:

"The *prima facie* presumption of the reasonableness, justness, and correctness of an order of the Corporation Commission, obtaining by reason of section 22, art. 9, Const., applies only to the facts found by the commission, or established by evidence upon which the commission failed to make a finding; and, where a fact material to the reasonableness, justness, and correctness of an order is lacking in the finding of facts made by the commission, and is not supplied by the evidence, the presumption obtaining by reason of said section does not apply, and on review in this court such order cannot be sustained."

The order in reference to the stockpens is therefore affirmed to the extent of requiring their removal from their present location to be reconstructed in some suitable and accessible place, and reversed

as to the portion fixing their capacity at 300 head of cattle. They should be built, however, of such dimensions as will furnish reasonably convenient, adequate, and suitable facilities for the proper handling of all stock offered for shipment. Stockpens are a convenience of such character that they can be easily enlarged and the facilities connected therewith easily increased in the event when first erected they prove to be too small or inadequate.

In regard to the order for a depot, the record contains pictures of the one now standing, along with a blue print showing defendant's proposed alteration to meet the demands of that station. The company concedes that its present facilities are inadequate. The old depot which is now standing on the ground has heretofore been used as a passenger depot for both white and negro passengers, a baggage room, and freight depot. On complaint being made of its inadequacy, and insistence for additional freight depot facilities, the company constructed a freight depot separate and apart from it, and suitable for the purposes intended. It now proposes in lieu of the order of the commission to raise this depot, move it back from the track, and construct a standard platform, remove the freightroom, partitions, and remodel and refit the building, which, when done and devoted to passenger traffic alone, it is contended will make it sufficiently large, convenient, commodious, and comfortable to adequately meet the demands of the station. The evidence shows that the hightest average number of passengers taking a train at that place at any one time is approximatley 60. It is proposed on the part of the company to so remodel this building that from 100 to 125 patrons will be provided with seats in the proposed waiting room, which will be lighted and heated with gas. This offer was rejected by the commission, and the opinion expressed in its findings that, in view of the size and importance of Nowata, and the fact that the income of the company is from $25,000 to $30,000 per month at that station, the reasonable necessities of the town would require a depot to be constructed which should cost at least one month's income. The company insists that the old building will, when repaired, be suitable for the purposes

intended, and will be adequate to the needs of the people, and will cost approximately $600 or $700. The order of the commission does not set forth the character of station to be constructed, but leaves that to be determined upon the submission of plans and specifications. The Constitution of the state of Oklahoma (section 18, art. 9) empowers the commission with the authority and duty to supervise, regulate, and control "all transportation and transmission companies doing business in this state in all matters relating to the performance of their public duties and their charges therefor and of correcting abuses," and requires them to establish and maintain "all such public service facilities and conveniences as may be reasonable and just," and section 26, art. 9, Const., provides that:

"It shall be the duty of each and every railway company, subject to the provisions herein, to provide and maintain adequate, comfortable, and clean depots, and depot buildings, at its several stations, for the accommodation of passengers, and said depot buildings shall be kept well lighted and warmed for the comfort and accommodation of the traveling public. * * * "

Counsel for the company insist that, in view of the foregoing facts, the order made is not within the powers of the commission, and is therefore unlawful, but neither party calls our attention to any adjudicated case wherein the proposition here involved has been decided. Practically all of the cases involving the question of depots and their establishment relate to the requiring of trains to stop at certain stations which incidentally demanded the construction of depot buildings, but none of the cases, so far as we have been able to find, have involved the power here sought to be exercised of requiring a company to remove a depot it is maintaining and desires to retain, and which it claims it will be able to repair at comparatively small expense so as to make it fully adequate, and to submit plans for another different and more expensive one.

A Missouri statute requiring railway companies to stop their trains at certain places and erect depots was sustained by Judge Brewer in the case of *State ex rel. Barton County v. Kansas City;*

*Ft. S. & G. R. Co.* (C. C.) 32 Fed. 722, with the following comment:

"It is one thing to require a railroad company to stop its trains at a given point; it is another to require it to go to the expense of building a depot at that point. One means nothing but the manner of use; the other calls for an outlay of money. Much larger liberty will be accorded to the Legislature in the one direction than in the other. I do not mean to assert that the police power does not extend to any cases of the latter nature. I simply affirm that the courts will put narrower boundaries upon an attempted exercise of this discretion."

The question involved in this case is simply one of power. Has the Corporation Commission or the state, through its Legislature, the power to say to a railway company which tenders a convenience and facility in the shape of a depot, which under the evidence is sufficiently large in dimensions to accommodate the traveling public and which it proposes to light and heat with gas, and which can be made and kept comfortable, and which the company then has located at the proper place and desires to retain, that notwithstanding the building is large enough, can be sufficiently lighted and heated, and may be fitted with the necessary sanitary arrangements, and can be made and kept clean and comfortable, still it is an inexpensive frame structure, 19 years old, and is located in a city and at a station where the receipts of the company are large and where the business and other structures of the city are ornate and expensive, therefore, the same is rejected, and then make an order requiring its removal and the construction of a comparatively expensive, modern, up to date building? While the commission concededly has complete jurisdiction over the character of service rendered by the company to the public, and may make and unmake schedules, and may require additional trains, cars, and conveniences when needed, may it go one step further, and compel the owners of the railway to violate their judgment as to the business propriety of destroying and removing a facility which can cheaply be made adequate and to replace it with one more ornate and expensive, but which in the end will do

no more than the one proffered? The investment in a railway company devoted to a public use is, where owned by private individuals, private property. When this private property is devoted to a public service, on account of certain grants or power, no doubt the parties so devoting it yield to the public the right to its regulation. Do they yield more and grant the right to an appropriation and application of its earnings by the public through legislative commissions to be used as is directed in this case, and that, too, over the protest and against the judgment of those whose investment and labors have produced them? It may be true, as suggested by both counsel, that the people will ultimately pay for this building, and will be required by the levy of toll for freight and passengers to return an income to the investors upon this additional expense, but may the stockholders of the company who own its property be lawfully compelled against their will to make an investment in an expensive structure when one less expensive will be adequate simply because a return will be made upon the investment? Have they been stripped of all option? We do not suppose it will be contended that full power equal to that of ownership is invested by the Constitution in the Corporation Commission over these properties, but, if the order here made may under the law be sustained, it occurs to us that there is but little right and power of management, control, or disposition of these properties or their earnings left in the hands of those who own them.

Among the provisions of an act of the Legislature of Tennessee establishing a Railroad Commission was section 17, which empowered the commission to give information in writing to the railway corporation of improvements and changes which they adjudge to be proper, for additional rolling stock, or any addition to or change of station or station houses, or any change in the rates of fares for freight or passengers, etc. On the validity of this act being attacked, the Circuit Court of the Middle District of Tennessee, in the case of *Louisville & Nashville Ry. Co. v. Railroad Commission of Tennessee* (C. C.) 19 Fed. 679, speaking of this particular section, said:

"These powers, in addition to the authority to prescribe rates, include all the incidents pertaining to the absolute ownership of property. In the exercise of them the commission can limit receipts and dictate expenditures, insure prosperity to one company, and drive another into bankruptcy, and assume the management and control of the business and operations of every railroad corporation in the state. * * * In a word, the commission under the terms of this act hold, in so far as railroad corporations are concerned, the issue of life and death as in the hollow of their hands."

The act was to the extent there involved held to be unconstitutional, and an infringment upon the constitutional guaranties of the companies. And the Supreme Court of the United States in the case of *Atlantic Coast Line R. R. Co. v. North Carolina Corporation Commission,* 206 U. S. 1, 27 Sup. Ct. 585, 51 L. Ed. 933, said:

"As the public power to regulate railways and the private right of ownership of such property coexist and do not the one destroy the other, it has been settled that the right of ownership of railway property, like other property rights, finds protection in constitutional guaranties, and therefore, wherever the power of regulation is exerted in such an arbitrary and unreasonable way as to cause it to be in effect not a regulation, but an infringement upon the right of ownership, such an exertion of power is void because repugnant to the due process and equal protection clauses of the fourteenth amendment."

The Supreme Court of Wisconsin in the case of *Minneapolis, St. Paul & S. S. M. R. R. Co. v. Railroad Commission,* 136 Wis. 146, 156, 116 N. W. 905, 909, 17 L. R. A. (N. S.) 821, says:

"The exact legal relation of the railroad to the state and its citizens presents many grave and difficult legal problems. It was unknown to the ancient jurists. Restrictions of written Constitutions and of our dual system of federal and state control of commerce, the vastness of the interests affected, the multitude of detail, and the many sided legal and economic nature of the questions ordinarily presented are responsible for much of this difficulty, the extraordinary development of the carrying trade in modern times for more. Consequently the law on this subject, statute and unwritten, is more or less in a state of transition at the present time."

The questions presented in this case are not free from difficulty. The law, as suggested, is in more or less of a transitory state at the present time, but, with the light we now have, we conclude the order cannot be sustained. Section 26 of article 9 makes it the duty, as we have heretofore noted, of every railway company to provide and maintain adequate, comfortable, and clean depots and depot buildings at their several stations, and there can be no doubt on the proposition that the authority and power to enforce this requirement is vested in the Corporation Commission of the state, and the conclusion to which we have arrived in this case is not intended to limit to any extent the exercise of this legitimate power. It has the authority and is charged with the duty and responsibility of determination when any depot building maintained by a railway company meets the requirements of the station. The question of what may be deemed adequate in any given case, however, is not as a matter of course, subject to any inclusive or exclusive definition. The term "adequate or reasonable facilities" received consideration at the hands of the Supreme Court of the United States in the recent case of *Atlantic Coast Line R. R. Co. v. Wharton et al.,* 207 U. S. 328, 28 Sup. Ct. 121, 52 L. Ed. 230, and of it Mr. Justice Peckham, who prepared the opinion for the court, said:

"The term 'adequate or reasonable facilities' is not in its nature capable of exact definition. It is a relative expression, and has to be considered as calling for such facilities as might be fairly demanded, regard being had, among other things, to the size of the place, the extent of the demand for transportation, the cost of furnishing the additional accommodation asked for, and to all other facts which would have a bearing upon the question of convenience and cost."

In determining what is adequate, the foregoing consideration should receive attention, and in the present case, after the company has completed and tendered for use the depot which it proposes to perfect, if then the same affords to the traveling public and passengers of the road an adequate, comfortable depot, is kept clean, supplied with heat and light and sufficient for the comfort

and accommodation of the public, it will meet the requirements of the Constitution, and more cannot lawfully be required, but, should it be deficient in any one or more of these particulars, the jurisdiction of the commission is complete and plenary to require them and enforce its requirements by proper rules and orders.

Therefore, the order of the Corporation Commssion heretofore made directing that the railway company construct a new passenger depot to be constructed on the ground where the present depot is now located is reversed.

All the Justices concur.

## ON REHEARING.
### Opinion · Filed September 27. 1911.

PER CURIAM. In the petiton of appellees for a rehearing, among other things, it is set up that (a), on account of the 19 years of deterioration of the depot building, it is impracticable to change the depot at Nowata to one that will adequately accommodate the public; that (b) the freightroom that it is proposed to convert into a waiting room, on account of the oil and grease and vermin that have accumulated therein during such period, could not practically be converted into such facility so as to adequately meet the required needs for the public at said station; and that (c) on account of said station being within the fire limits of said city it would be impossible to reconstruct same in such manner as to meet the public needs at said station.

There is no evidence in the record on these points. When the appellant, as appears from the record, offered to convert not only the passenger, but the freightroom, the same constituting one building, into a passenger station, setting up the fact that, when the same was overhauled and improved, it would adequately meet the requirements of said station, evidence should have been taken thereon. Such appears upon the record before us for review not to have been done. Section 22 of article 9 of the Constitution provides:

" * * * But the court may, when it deems necessary in

the interest of justice, remand to the commission any case pending on appeal, and require the same to be further investigated by the commission, and reported upon to the court (together with a certificate of such additional evidence as may be tendered before the commission by any party in interest), before the appeal is finally decided."

The traveling public at the station of Nowata are entitled to adequate passenger depot facilities. In view of the state of this record and the powers vested in this court by virtue of the foregoing provision of the Constitution, this case is remanded to the commission, with directions to further investigate and receive evidence on said issues that may be offered by any party in interest, and to receive such other evidence thereon as may be considered by it essential, and to report to this court, together with proper certificate, etc., within 30 days from this date.

All the Justices concur.

## ON REHEARING.

Opinion Filed March 21, 1911.

(114 Pac. 1096.)

Order of Corporation Commission Approved.

DUNN, J. On the occasion of the consideration of the petition for rehearing in the foregoing case (*St. L. & I. M. Ry. Co. v. State,* 111 Pac. 396), the same was referred to the Corporation Commission for the purpose of taking evidence upon three propositions: First, as to whether it would be practicable to change the depot to one which would adequately accommodate the public; second, whether the floor of the freight room was so contaminated by oil, grease, and vermin that it was not practicable to convert it into a suitable waiting room; and, third, whether, on account of any local ordinance providing for limits within which noncombustible buildings alone might be repaired, removed, or reconstructed, the appellant could be permitted to carry out its program of removing and remodeling the present structure, rather

than to comply with the order of the Commission. Evidence was duly taken tending in a measure to confirm each of these propositions, but particularly the last. It appears that the building is located within the fire limits of the city, and that to carry out the program proposed by the company would violate the terms of one of its ordinances. There is no claim made by counsel, either in their brief or in the evidence, that the company has the consent of the council to move the building as is proposed, nor is any claim made that the same could be secured.

Under these circumstances, the order of the Commission is approved.

All the Justices concur.