**CHICAGO, R. I. & P. RY. CO. v. STATE et al.**

No. 16064—Opinion Filed Jan. 12, 1926.

Rehearing Denied April 13, 1926.

1. **Corporation Commission—Appeal from Orders—No Presumption of Reasonableness Where Material Fact Lacking.**

The prima facie presumption of the reasonableness, justness, and correctness of an order of the Corporation Commission, obtaining by reason of section 22, art. 7, of the Constitution, applies only to the facts found by the Commission, or established by evidence upon which the Commission failed to make a finding, and where a fact material to the reasonableness, justness, and correctness of an order is lacking in the findings of fact made by the Commission, and is not supplied by the evidence, the presumption obtaining by reason of said section does not apply, and on review in this court such order cannot be sustained.

2. **Railroads—Depots—"Adequate and Reasonable Facilities"—How Determined.**

The term "adequate or reasonable facilities" is not in its nature capable of exact definition. It is a relative expression, and has to be considered as calling for such facilities as might be fairly demanded, regard being had, among other things, to the size of the place, the extent of the demand for transportation, the cost of furnishing the additional accommodation asked for, and to all other facts which would have a bearing upon the question of convenience and cost.

3. **Same — Complaint Before Corporation Commission—Adequacy of Improvements Proposed by Railroad in Lieu of New Depot.**

Where a city files its application with the Corporation Commission seeking to require a railway company to erect a new passenger station and furnish additional facilities for patrons of the road, and the company submits plans, specifications, and estimate of costs, and there is evidence tending to prove that the improvements contemplated will afford reasonably ample facilities, and such improvements will not violate any statute or valid ordinances of such city, in the absence of any testimony reasonably tending to prove such contemplated improvements will not afford ample facilities, it is error for the Corporation Commission to arbitrarily reject such proposed plan of improvements.

4. **Same—Continuing Jurisdiction of Commission.**

Where a railway company presents plans, specifications, and estimate of cost of making alterations in a passenger station, and there is no evidence that the alterations and improvements will not afford adequate facilities, such proposed improvements meet the requirements of the Constitution, and if, after such improvements are made, the same prove inadequate, the jurisdiction of the Corporation Commission is complete and plenary to require them to enforce its requirements by proper rules and orders.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Appeal from Order of the Corporation Commission.

The city of Enid, Okla., filed its petition with the Corporation Commission, praying an order of the Commission requiring Chicago, Rock Island & Pacific Railway Company to erect a new depot in the city of Enid. From an order requiring the railway company to submit plans and specifications to the Corporation Commission, and to proceed to provide "new passenger facilities," the railway company appeals. Reversed.

W. R. Bleakmore, John Barry, A. T. Boys, and W. F. Collins, for plaintiff in error.

Simons, McKnight & Simons and A. E. Underwood, for City of Enid.

E. S. Ratliff, for Corporation Commission.

Opinion by RUTH, C. For convenience the plaintiff in error will be designated as "the railway company," the city of Enid as "the city," and the Corporation Commission as "the Commission."

The city of Enid, a municipal corporation, filed its application with the Commission, wherein the city prayed an order be made by the commission requiring the railway company to construct a new passenger station in the city, and at a different place or location, but afterwards that portion of the petition praying the station be erected on a different site was abandoned. After hearing all the evidence, the commission made certain findings and promulgated a certain order, which summarized are as follows:

"(1) That the present passenger station is inadequate to satisfy the present public convenience, comfort, and accommodation, etc. (2) That irrespective of any interstate traffic, additional station facilities are necessary, etc. (3) The improvements suggested by the railway company will not result in such adequacy for the comfort and accommodation of the traveling public. (4) That the railway company should be required to establish and maintain additional station facilities such as are adequate, etc. (5) That the railway company is financially able to make the expenditures necessary in the construction, establishment, and maintenance of such additional facilities. (6) That the railway company should be required within 60 days from the date of this order to file plans, specifications, and estimates of cost covering the construction, establishment and maintenance of a new passenger station facility for the service of the public at the city of Enid."

The commission thereupon ordered the railway company to submit within 60 days plans, specifications, estimates, and cost of construction, establishment and maintenance of a new passenger station adequate for present and future comfort and accommodation of passengers served by the railway company in the city of Enid, and further ordered the railway company to proceed without unreasonable delay to take such steps as may be necessary for the construction and maintenance of such new passenger station facilities, subject to the approval, as to plans, specifications and cost, of the Corporation Commission.

From the findings and order, the railway company appeals and assigns as error the following: (1) The Corporation Commission was without jurisdiction to make the order. (2, 3, 4, 5) The order is not supported by any sufficient or competent evidence, is contrary to the evidence, and is unjust, unreasonable and arbitrary, and is contrary to law. (6) That said order is violative of the rights of this plaintiff in error under the provisions of the Constitution of the United States and the Constitution of the state of Oklahoma.

The evidence in this case discloses the present depot was built in 1908 and since that time a baggage room has been added, which to some extent relieved conditions in the depot proper. The mayor, the president of the Chamber of Commerce, the secretary of the Chamber of Commerce, the city health physicians, the city engineer, and several merchants testified for the city, showing the growth of Enid since 1900. Their testimony, however, being principally to the effect that the sanitary conditions were bad, and we think the evidence fully establishes the fact that the present depot is unsanitary and improperly and inadequately heated.

Complainants further testify that the present depot has a seating capacity of 60, and the city health physician testified that, allowing the standard of 250 cubic feet of air space to each individual, the capacity of the waiting room is but 53 1-3; that they have noted crowded or congested conditions, but so far as their evidence discloses, these conditions were occasioned by "whole families" going to the depot to greet arriving, or speed departing, guests, or at a time when conventions had adjourned and delegates were leaving for home; that the population of Enid had increased from 13,799 in 1910 to 24,000 in 1923. They also showed the increase in telephones, electric meters, water meters, and showed the value of building permits issued each year since 1920, but nowhere do they attempt to testify as to the probable number of travelers using the depot per day, or the number embarking or debarking at any particular time of the day or night, but testify that as a general proposition the depot facilities are inadequate.

On behalf of the railway company it is testified that because of the advent of hard surfaced roads and the increased use of automobiles, the sale of local tickets at that depot had dropped from $29,891.40 in June, 1920, to $16,416 in June, 1923, and this was the "peak" month. One dealer in a popular priced car, who was called for the complainant city, testified as to the value of his sales, and the figures given indicate this one dealer has sold approximately 2,500 cars in this city since 1921, and in 1923 his total sales amounted to $434,541.13, which to some extent tends to prove the contention of the railway company that the use of cars has greatly reduced railway passenger travel.

The railway company introduced plans and specifications showing contemplated im-

provements, alterations, and extensions, including additional seating capacity; correction of the unsanitary conditions of "comfort stations," and the installation of steam heat. We cannot say the introduction of this testimony discloses any bona fides, as they testify they have been contemplating these improvements for a number of years, when it is evident to the merest tyro that these alterations could be completed within 60 days. However that may be, the railway company introduced witnesses who resided or had places of business in sight of, and in close proximity to, the depot, and others who visited the depot from four to five times each day, and these witnesses describe in detail the conditions about the depot and the volume of travel from the arrival and departure of the 4:38 a. m. train to the arrival and departure of the late night trains, and describe the travel as very light until the 9:50 going south and the 9:25 coming from the south, and place the maximum number of passengers disembarking from these trains at 50, and a like number embarking, except on special occasions, such as conventions, etc., and these witnesses testify there is no congestion, and that conditions about the depot were more crowded in 1910 than in 1923.

It is upon this evidence, and without any evidence on the part of the complainant city, showing the volume of travel or the number of passengers using the depot at any time exceeds five or six on the early morning train, and increases to from 25 to 50 on the night trains, the commission makes its findings, and issues its order directing the railway company to within 60 days submit plans and specifications and estimate of costs of a new station, and to proceed without unreasonable delay to take such steps as may be necessary for the construction and maintenance of such new passenger station facilities, subject to approval as to plans, specifications, and costs, of the Corporation Commission.

Section 22, art. 9 of the Constitution of Oklahoma provides:

"That the action of the commission appealed from shall be regarded as prima facie just, reasonable and correct, but the court may, when it deems it necessary, in the interest of justice, remand to the commission any case pending on appeal, and require the same to be further investigated by the commission," etc.

In construing this section of the Constitution, this court said:

"The prima facie presumption of the reasonableness, justness and correctness of an order of the Corporation Commission, obtaining by reason of section 22, article 7, of the Constitution, applies only to the facts found by the commission, or established by evidence upon which the commission failed to make a finding; and, where a fact material to the reasonableness, justness and correctness of an order is lacking in the finding of facts made by the commission, and is not supplied by the evidence, the presumption obtaining by reason of said section does not apply, and on review in this court such order cannot be sustained." St. L. & S. F. Ry. Company v. Newell, 25 Okla. 502, 106 Pac. 818; C., R. I. & P. Ry. Co. v. State, 24 Okla. 370, 103 Pac. 617; A., T. & S. F. Ry. Co. v. State, 23 Okla. 210, 100 Pac. 11; A., T. & S. F. Ry. Co. v. State, 23 Okla. 510, 101 Pac. 262; Okla. Natural Gas Co. v. Corporation Commission, 90 Okla. 84, 216 Pac. 917.

In St. Louis, I. M. & S. Ry. Co. v. State, 28 Okla. 372, 111 Pac. 396, 114 Pac. 1096, the questions involved were: (1) The erection of a new passenger station, and (2) the removal to another site, and the enlargement of the company's stock pens. The order of the commission was for the removal of the stock pens and an increase in capacity to accommodations for 300 head of cattle, and the construction of a new depot at a cost equal to one month's income at such depot, placed at from $25,000 to $30,000; the plans and specifications to be approved by the Corporation Commission; and this court in the body of the opinion said:

"The record does not disclose the commission heard any evidence showing what would be reasonable and what would be unreasonable in reference to the size of the stock pens ordered. * * * There is no more evidence that more than one car of cattle were offered at one time, nor is there any evidence that it would be necessary to construct stock pens of sufficient size to hold a train load of cattle, and an order which arbitrarily requires such extraordinary convenience cannot be held prima facie reasonable and just, where there is a total want of evidence to support it." Citing St. L. & S. F. Ry. Co. v. Newell, supra.

The court thereupon affirmed the order in so far as it required the removal of the stock pens to another site, and reversed that portion of the order fixing their capacity at 300 head of cattle.

Continuing, the court, discussing that portion of the order relating to the passenger station, said:

"The evidence shows that the highest average number of passengers taking a train at the place at any one time is approximately 60. It is proposed on the part of the company to so remodel this building that from 100 to 125 patrons will be provided with seats in the proposed waiting

room, which will be lighted and heated with gas. This offer was rejected by the commission. * * * The order of the commission does not set forth the character of the station to be constructed, but leaves that to be determined upon submission of plans and specifications."

This court reversed that portion of the order requiring the construction of a new depot, but on rehearing. the cause was remanded to the commission to hear further evidence and report to this court, and upon its resubmission to this court, it appearing that the structure was of frame construction and within the fire limits of the city. and that to carry out the program proposed by the company would violate one of the city ordinances, the order was affirmed. (28 Okla. 382, 114 Pac. 1096.)

In the instant case no question of the violation of the city's fire limit ordinance can arise, as it is conceded the present passenger station is of brick construction.

The plan of improvements submitted by the company contemplates an expenditure of between $5,000 and $6,000. and provides for up-to-date sanitary plumbing; increased seating capacity: the addition of a smoking room; redecorating, and the heating by steam, by attaching on to the steam heating plant, already installed and in operation in the freight depot about 50 feet removed.

Admittedly, the commission has complete jurisdiction over the character of service rendered the public by the company. and may make and unmake train schedules and. require additional faciilties when necessary, but its orders, to support the prima facie presumption of reasonableness. justness. and correctness, obtaining by reason of section 22, art. 9 of the Constitution, must be sustained by evidence and it was idle and unreasonable to contend that a comparatively modern brick railway station cannot be remodeled and enlarged to adequately provide for the convenience and comfort of the patrons of this company at this point.

It will not be denied that when private property is devoted to a public service, on account of certain grants or power, that the parties so devoting it yield to the public right to its regulation. The investment in a railway company devoted to a public use is. where owned by private individuals, private property, and through yielding to public regulation. the owners do not yield the right to an appropriation and application of its earnings by the public, and over its protest, unless it is made apparent by the evidence that the appropriation and application of its resources are necessary for the public safety and convenience. "Regu-

lation" of corporations, as used in the Constitution and laws of this state, must not be confused with "management and control," and the owners of railways are not by the Constitution stripped of all option in the expenditure of their finances. but may exercise some option as to design, etc.. so long as the structure or improvements or extensions will fully meet the reasonable needs of its patrons, and supply all reasonable comforts and conveniences. And as was said by this court in St. L., I. M. & S. Ry. Co. v. State, supra:

"We do not suppose it will be contended that full power equal to that of ownership is invested by the Constitution in the Corporation Commission over these properties, but, if the order here made may under the law be sustained it occurs to us that there is but little right and power of management, control or disposition of these properties or their earning left in the hands of those who own them."

Mr. Justice White. speaking for the court in Atlantic Coast Line R. R. Co. v. North Carolina Corporation Commission, 206 U. S. 1, 27 Sup. Ct. 595. 51 L. Ed. 933. said:

"As the public power to regulate railways and the private right of ownership of such property co-exist and do not the one destroy the other, it has been settled that the right of ownership of railway property. like other property rights, finds protection in constitutional guaranties, and, therefore, wherever the power of regulation is exerted in such an arbitrary and unreasonable way as to cause it to be in effect not a regulation, but an infringement upon the right of guardianship, such an exertion of power is void because repugnant to the due process and equal protection clauses of the Fourteenth Amendment."

And to quote Mr. Justice Peckham, who prepared the opinion for the court in Atlantic Coast Line R. R. Co. v. Wharton, 207 U. S. 328, 28 Sup. Ct. 121, 52 L. Ed. 230;

"The term 'adequate or reasonable facilities' is not in its nature capable of exact definition. It is a relative expression, and has to be considered as calling for such facilities as might be fairly demanded, regard being had, among other things, to the size of the place, the extent of the demand for transportation, the cost of furnishing the additional accommodation asked for, and to all other facts which would have a bearing upon the question of convenience and cost."

The evidence of the complainant city as to the inadequacy of the station facilities (apart from unsanitary conditions), being very general in its nature, and the specific instances of congestion being confined to extraordinary conditions, such as conven-

tions, etc., and the evidence of witnesses, long resident of the city, called for the railway company, some of whom have examined the plan of the improvements proposed by the company, being to the effect that such improvements and alterations will correct the unsanitary conditions, and in every way meet all needful and reasonable requirements of the patrons of the road at that point and afford adequate facilities, we are of the opinion that when these improvements, alterations, and additions are perfected, if the same then affords to the traveling public and passengers of the road an adequate and comfortable depot, and is kept clean, supplied with heat and light sufficient for the comfort and accommodation of the public, it will meet the requirements of the Constitution, and more cannot be lawfully required, but should it be deficient in any one or more of these particulars, the jurisdiction of the commission is complete and plenary to require them to enforce its requirements by proper rules and orders.

Therefore, the order of the Corporation Commission requiring the railway company to submit plans and specifications, and estimate of cost, for the construction of a new station, and requiring the company to construct such new station is reversed.

By the Court: It is so ordered.

Note.—See under (1) 33 Cyc. p. 53 (Anno). (2) 33 Cyc. p. 655. (3) 33 Cyc. p. 50. (4) 33 Cyc. p. 47.