THE STATE ex rel. WABASH RAILROAD COMPANY et al., Appellant, v. PUBLIC SERVICE COMMIS-SION and C. H. PAYSON, Mayor.

Division One, June 1, 1917.

1. **PUBLIC SERVICE COMMISSION:** Order to Construct Passenger Station: No Substantial Evidence. If the order of the Public Service Commission is unsupported by any substantial evidence, it is unreasonable and must be nullified. Where the evidence before the commission does not tend to prove any defect or inadequacy in the present passenger depot which cannot be corrected by repairs, improvement or enlargement, an order of the commission requiring the railroad company to erect a new depot in a new place is unreasonable.

2. ————: ————: Offer to Construct. Plans submitted as those of the building the railroad company would be willing to construct at some time in the future when it deemed itself in a financial condition to erect a new passenger depot, do not constitute an offer to erect a new building, although they were deemed acceptable by the city.

3. ————: Deference to Commission's Finding: Burden of Proving Unlawfulness.

Held, by BLAIR, J., that sections 123 and 124 of the Public Service Act, Laws 1913, p. 647, mean that a determination of a fact by the Public Service Commission cannot be overthrown by a court until he who assails it discharges the burden of proving its unlawfulness or unreasonableness by clear and satisfactory evidence; that the court cannot put itself in place of the commission, try the matter anew as an administrative body, and substitute its findings for those of the commission: and that the direction to circuit courts, found in section 111, to review the orders and decisions of the commission "as suits in equity" is necessarily qualified by the specific provisions of said sections 123 and 124 which prescribe the weight to be given to such orders and decisions.

Held, by BOND, P. J., that the findings of the commission are neither conclusive upon the court nor prima-facie correct, but its orders and decisions are to "be tried and determined as suits in equity," as is declared by section 111, and as was correctly held by Court in Banc in Railroad v. Pub. Serv. Comm., 266 Mo. l. c. 340, and Lusk v. Atkinson, 268 Mo. l. c. 117; and that sections 123 and 124 cannot be held to overthrow the specific and preclusive provision of section 111, which forms a special code applicable to the review of the commission's orders.

State ex rel. v. Public Service Comm.

*Held*, by GRAVES, J., that the rulings of the commission, in these statutory *certiorari* proceedings, reach the court with presumption of right action, and as prima-facie valid, just as does a judgment of a circuit court in a case appealed to this court, but this presumption and prima-facie case may be overcome by the evidence in the record, and sections 123 and 124 do not compel this court to consider the findings of the commission as otherwise than prima-facie lawful and reasonable.

*Held*, by WOODSON, J., that when a case reaches the Supreme Court from the commission it shall be tried as a suit in equity, which means that the court will defer somewhat to the findings of the commission, but not abdicate its authority to make its own findings of fact.

Appeal from Macon Circuit Court.—*Hon. Nat M. Shelton*, Judge.

REVERSED AND REMANDED.

*J. L. Minnis, N. S. Brown* and *Guthrie & Franklin* for appellants.

(1) The order of the commission is unlawful and void, because the commission is without power to condemn the existing passenger depot at Macon and require appellants to erect in lieu thereof an entirely new structure. Where a railroad company has provided passenger depot facilities at a place on its line, and the complaint is that the facilities so provided are "inadequate," then, under the provisions of the Public Service Commission Act, the commission's power is limited to a finding of facts with respect to particulars in which such facilities are inadequate, and consequently the commission has no power, merely because an existing station is inadequate, to entirely condemn the existing structure, and order a new one to be substituted therefor. Secs. 27, 43, par. 2 of 47, 49, Laws 1913, p. 570. (2) The order of the commission is invalid because it fails to advise appellants wherein the present station structure is inadequate, and fails to direct what particular repairs, improvements, changes or additions are required in order to make the present structure reasonably adequate. Par. 2 of Sec. 47, Laws 1913, p. 585. (3) The order of the commission is unlawful and unrea-

sonable, because it denies to appellants the right to make such repairs, changes, additions and improvements in the present structure as will make the same adequate for the public service.

*Wm. G. Busby, Alex. Z. Patterson, Geo. N. Davis,* and *D. L. Dempsey* for respondents.

(1) Appellants' assignments of error numbered 1, 2 and 3, and they are the only alleged errors complained of in this case, are all directed against the first order of the commission made September 24, 1914, which was superseded by the order of the commission on April 15, 1915, and are not applicable to the last order.    (2) The construction of the Pubilc Service Law contended for by appellants in its three assignments of error is entirely too narrow and would leave the commission without right or power to provide for the public convenience and security by requiring proper appliances and service where inadequate and improper appliances and service is now provided.    The testimony clearly shows the present structure is inadequate from every standpoint, inconvenient, unsanitary, uncomfortable, illy lighted and dangerous.    The extension of the men's waiting room will not alleviate any of these conditions.    A reading of the testimony will convince the court that the only fair inference and conclusion that can be drawn by this court is that the present building, by reason of the manner and place of its construction and the age of the structure is incapable of being repaired or modified to an extent that would insure the traveling public reasonable, convenient and comfortable facilities.  Each one of the three assignments of error was waived by the defendants when they, after the order of September 24, above referred to, and pending the determination of their motion for rehearing thereon, came in and submitted to the commission detailed plans and specifications of a new depot which they were ready and willing to build at Macon.    This offer of the defendant was accepted by the complainant and the city council of the city of Macon and it was pursuant to this offer of appellants and acceptance by complainants that the order of April 15, 1914, was made.

BLAIR, J.—Relators appeal from a judgment of the Macon Circuit Court, affirming and holding reasonable and lawful an order of the Public Service Commission requiring relators to construct a new passenger depot at Macon, Missouri.

The complaint before the commission was filed by the mayor of the city of Macon and charged that the present Wabash depot at that city is inadequate for "the reasonable accommodation of the public at Macon," and that a new and larger depot was necessary for the adequate service of the community and for its security and convenience. The evidence offered pertained solely to the facilities available for passenger traffic. There was evidence tending strongly to show that the depot platform, in view of the manner of its use, is for a part of its length too narrow; that the men's waiting room is not large enough; the steps leading to the south end of the platform are improperly constructed and, owing to their not being covered, at times become coated with ice; that the steps at the north end are in need of repairs or reconstruction; that a water tank near the north end of the platform some times overflows and creates a muddy or icy condition which renders passage from the platform inconvenient and, to an extent, dangerous; that sufficient lights are not provided, and that the toilets maintained are not sufficiently protected from freezing weather; that, owing to the smallness of the men's waiting room, it is difficult to keep the waiting rooms in sanitary condition. Other facts necessary to a decision are referred to in the opinion.

I. The first question is as to the weight due the findings of the commission. The Legislature has committed to the Public Service Commission duties of very great importance. The scope of its activities, the character of its powers and the gravity of the questions it may determine give to it an authority and a dignity which, in addition to the ability of its personnel, are to be carefully regarded when the reasonableness or lawfulness of one of its orders is drawn in question. We are, however, not left to infer our duty

Deference
Due to
Findings.

respecting the deference due its findings. Section 123 of the Act of 1913 (Laws 1913, p. 647), expressly provides that all "rates, tolls, charges, schedules and joint rates fixed by the commission shall be in force and shall be prima-facie lawful, and all regulations, practices and services prescribed by the commission shall be in force and shall be prima-facie lawful and reasonable until found otherwise in a suit brought for that purpose pursuant to the provisions of this act."

Section 124, Laws 1913, p. 647, provides that: "In all trials, actions, suits and proceedings arising under the provisions of this act or growing out of the exercise of the authority and powers granted herein to the commission, the burden of proof shall be upon the party adverse to such commission or seeking to set aside any determination, requirement, direction or order of said commission, to show by clear and satisfactory evidence that the determination, requirement, direction or order of the commission complained of is unreasonable or unlawful, as the case may be."

That these provisions are valid cannot be successfully denied, and that they mean that the determination of a fact by the Public Service Commission cannot be overthrown by a court until he who assails it discharges the burden of proving its unlawfulness or unreasonableness by clear and satisfactory evidence is the only construction of which the unequivocal statutory language is susceptible. Such is the construction given similar language in other states in like circumstances. [Hocking Valley Ry. Co. v. Public Utilities Commission of Ohio, 92 Ohio St. 9; State v. Great Northern Ry. Co., 130 Minn. 1. c. 59; State ex rel. v. Fla. E. C. Ry. Co., 67 So. 906; State ex rel. Great Northern Ry. Co. v. Railroad Commission of Washington, 60 Wash. 1. c. 226; Pittsburg, C., C. & St. L. Ry. Co. v. Railroad Commission, 171 Ind. 1. c. 189; Settle v. Commission, 114 N. E. 1036.]

Further, no other position could be maintained. The commission's findings and acts are neither legislative nor judicial. It is an administrative body. It acts at the direction of the Legislature. The courts cannot constitution-

ally "usurp legislative or administrative functions by setting aside a legislative or administrative order on their own conception of its wisdom." "The Legislature never intended that the court should put itself in the place of the commission, try the matter anew as an administrative body, substituting its findings for those of the commission. A statute which so provided would be unconstitutional as a delegation to the judiciary of non-judicial powers." [State v. Great Northern Ry. Co., 130 Minn. l. c. 59, 60; Hocking Valley Ry. Co. v. Public Utilities Commission, 92 Ohio St. 362.]

The direction to the circuit court to try suits brought to review the orders and decisions of the commission "as suits in equity" (Sec. 111, pp. 641, 642, Laws 1913) is necessarily qualified by the specific provisions referred to which prescribe the weight to be given such orders and decisions. The provision (Sec. 114, p. 644, Laws 1913) that "appeals shall be prosecuted as appeals from judgments of the circuit court in civil cases, except as otherwise provided in this act," refers rather to the mode of prosecuting the appeal than to the weight to be given the commission's findings. At all events, it does not conflict in any way with sections 123 and 124 of the act. These views are in conflict with Railroad v. Public Service Commission, 266 Mo. 333, and Lusk v. Atkinson, 268 Mo. 109, in which decisions no reference was made to sections 122 and 123 of the act. In view of these facts this case should be transferred to Court in Banc.

II. It may be conceded the Public Service Commission has power, in a proper case, to order the construction of a new depot. [Sec. 49, p. 588, Laws 1913.] The question in this case is whether the order made is reasonable and lawful. The evidence does not tend No Sub- to prove any defect or inadequacy which canstantial not be corrected by repairs, improvements and Evidence. enlargement of the present depot. There is no evidence that it is physically impossible or even difficult to make the changes necessary to meet the objections made to the present structure. It does not appear that

there is any legal obstacle to the changes proposed. There is no evidence tending to show that the company's right of way is too narrow to accommodate the improvements desired and necessary or that the enlargement of the building and widening of the platform will in any way infringe upon any street or interfere with any other property. It conclusively appears that every objection made to the depot, except those to its age and appearance, can be met without erecting a new building in a new place. In these circumstances it is necessary to hold that the order is unreasonable since it is unsupported by any substantial evidence. A like situation arose in St. L., I. M. & S. Ry. Co. v. State, 28 Okla. 372, and a like conclusion was reached. In that case additional evidence was taken, and the order for the new building finally was sustained, but that evidence was such as to show that the repairs tendered could not actually and lawfully be made. Such evidence is not present in this record.

III. It is suggested that appellant made an offer to construct a new building of specified materials and design, and that this was accepted by the city and approved by the commission. The record does not support this contention. The plans submitted were tendered as those of the building appellant would be willing to construct at some time in the future when it deemed itself in a financial condition to erect a new building. This does not constitute an offer in the sense counsel use the term.

Offer to Build.

The judgment is reversed and the cause remanded. *Bond, P. J.,* and *Graves* and *Woodson, JJ.,* concur in seperate opinions.

BOND, P. J. (concurring.)—The facts in judgment in this case are stated and disposed of in the prefatory paragraph and in the subsequent second and third paragraphs of the opinion of Judge BLAIR, which portions of the opinion also make a complete and correct disposition of the case, and also of *all* the points suggested in the printed briefs of counsel, which, as far as I am able to

gather, do not present a hint of the contention discussed in paragraph one of the opinion. Indeed it was to be hoped that this ghost was laid by the unanimous decision of the Court in Banc (Railroad v. Pub. Serv. Com., 266 Mo. 1. c. 340, 341, et seq.) covering the point suggested in that paragraph of the opinion and the reconsideration of that point in the same case, to-wit:

"It is urged that we were in error in holding that we would not be bound by the findings of fact made by the commission in this case. The original opinion holds these cases must be heard as cases in equity. From that opinion we do not desire to depart. The act says that they shall be heard. That means that we will consider the evidence *de novo*. In equitable procedure this court is not bound by the findings of fact made by the chancellor *nisi*. We may yield to the judgment of the commission on facts (if the circumstances of the cause so appeal to us) as we may yield to the judgment of the chancellor *nisi* in equity, upon the facts, but not otherwise. There is no substance therefore in this ground of the motion for rehearing." [Ibid. 346.]

To the above *per curiam* every member of the court agreed, the only point on which Judge WOODSON differed being his view that in the exercise of its supervisory power this court might go further and even direct the order to be made by the commission.

The conclusions reached by the Court in Banc in that case and subsequently stated in Lusk v. Atkinson (268 Mo. 1. c. 117, 118) were based upon the *peculiar* and *specific* provisions of section 111 of the act creating the Public Service Commission. [Laws 1913, p. 641.] The language of a portion of that section is significant and conclusive of the correctness of the view expressed by this Court in Banc in the cases above cited. The concluding clause of this section is to-wit:

"No court of this State, except the circuit courts *to the extent herein specified,* and the Supreme Court on appeal, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the executing or operation thereof, or to

enjoin, restrain or interfere with the commission in the performance of its official duties.  The circuit courts of the State shall always be deemed open for the trial of suits brought to review the orders and decisions of the commission, as provided in this act, and the same shall be tried and determined as suits in equity.'' (Italics ours.)

The conclusions reached by the Court in Banc in those cases were not made without a consideration of all the provisions of the Act of 1913, bearing on the scope of review of the action of the Public Service Commission, but after repeated arguments in which the strenuous contention of counsel for that body was that its action in making the finding of facts was conclusive, absent the showing of a want of its jurisdiction or power, to act.  This contention necessarily embraced the assumption that the action of the commission was prima-facie correct, for it could not be conclusive and at the same time not be prima-facie valid.  My recollection is clear that the other sections of the statute cited in paragraph one of the principal opinion in this case were not overlooked by the learned counsel for the commission, but were referred to *arguendo* in the full discussion made by them in other cases affecting that body, prior to the determination by this Court in Banc of the extent and manner of its review of findings of fact of the Public Service Commission, when brought under its supervision according to the preclusive provisions set forth in section 111 of the Public Service Commission Act, supra.  In deference to the conclusions of this court, counsel for the commission did not re-agitate the matter in their briefs in the instant case.

While the view expressed in paragraph one of the principal opinion has no relevancy whatever, as is shown by that opinion, to the proper disposition of the present appeal and, therefore, affords no justification for sending this case to Banc, yet it is not sustainable in my judgment if it should hereafter become a vital question for consideration in disposing of a case which might turn on that point.  The two sections relied on in that paragraph of the opinion (secs. 123, 124, Laws 1913) cannot be held by any sound construction to overthrow the *specific and*

*preclusive* provision of section 111, which furnishes the only method and the precise extent to which the orders and judgments of the commission are to be considered on appeals, with complete details of every step to be taken in the exercise of such power for review, thus forming a *special code* applicable to the review of the orders of that body.

Neither is there any support for the view expressed in paragraph one of the principal opinion in the cases cited from foreign jurisdictions. In the case of H. V. Ry. Co. v. Commission, 92 Ohio St. 9, it distinctly appeared that the contention was that the orders of the commission in that case "were against the manifest weight of the evidence," to which the court replied: "We have carefully examined all the evidence and considered it in the light of the conflicting claims of the parties in reference to it, and we are not able to say that the findings of the commission are against the evidence." [Ibid. l. c. 16.] And again the court said: "Much testimony was offered touching this question and as already indicated we are not able to say that from an analysis of it the finding of the commission was not sustained by the evidence." [Ibid. l. c. 22.] It is to be noted, furthermore, that the court in that case was not dealing with any such provision defining the scope of review (as in equity) as is found in our statute.

The next case is State v. Railway, 130 Minn. l. c. 59. The statute of that State, *unlike ours,* simply provides for review of the orders of the commission as of the "trial of civil actions" and that the findings of fact by the commission are prima-facie reasonable and the burden of re-proof is upon appellants. In that State, also, there is no such express and preclusive provision as is contained in our act.

The case of Pittsburg, C., C. & St. L. Ry. v. Commission, 171 Ind. l. c. 189, seems not to be in point. It merely refers to an early decision in Minnesota and without making any reference whatever to *any local statute* of Indiana, rules that the order of the Indiana commission is prima-facie valid.

The case of State ex rel. v. Railroad Commission of Washington, 60 Wash. 1. c. 226, is clearly not in point.

The case of Settle v. Commission, 114 N. E. 1036 et seq., is another Ohio case expressed by a *per curiam* to the effect that an examination of the record showed that the "order of the commission was not unlawful and unreasonable," citing the case in 92 Ohio St. supra.

It is plain to a demonstration that these rulings based on local statutes wholly dissimilar to ours, have not even persuasive authority.

The Public Service Commission Act of this State was made up largely of detached paragraphs from the laws of several other states. Such a composite is naturally lacking in the harmony of a well-rounded scheme of constructive legislation. The courts have, therefore, been called upon, by interpretation and construction, to mould and fashion the Public Utilities Act into workable shape, so as to carry into effect the important object of safeguarding full control by the State of the corporations enfranchised by it, to the end that their public duties may be enforced. That sedulous care has been given to this task is apparent from the decisions of this court.

Since the point in judgment in this case does not involve the views expressed in paragraph one of the opinion of Judge BLAIR, I see no ground whatever for transferring the present case to Banc, and concur in all of his opinion except the views expressed in paragraph one.

GRAVES, J. (concurring.)—I concur in the second paragraph of this opinion and in the result reached. To what extent I concur in the first paragraph, that which follows will indicate.

I think that paragraph one of the opinion of WOODSON, C. J., in Railroad v. Public Service Commission, 266 Mo. 1. c. 340, practically declares the law. My individual views are expressed in the *per curiam* on the motion for rehearing, because I prepared such *per curiam*. The contention in that case made, was that the findings of the commission were final and conclusive upon this court. To this contention the court refused to agree, and I am

satisfied with that ruling. In my judgment the rulings of the commission, in these statutory *certiorari* proceedings, reach us with the presumption of right action upon the part of the commission, and as prima-facie valid, but this presumption and prima-facie case may be overcome by the showing made in the record, and if so the duty of this court to so declare is clear. I do not understand that the opinion of Woodson, C. J., controverts these views, because he says that we will give such findings just such consideration as we give the findings of a chancellor *nisi* in equity cases. In the *per curiam* opinion in that case, 266 Mo. l. c. 346, to which we all agree, we said:

"The original opinion holds these cases must be heard as cases in equity. From that opinion we do not desire to depart. The act says that they shall be so heard. That means that we will consider the evidence *de novo*. In equitable procedure this court is not bound by the findings of fact made by the chancellor *nisi*. We may yield to the judgment of the commission on the facts (if the circumstances of the cause so appeal to us) as we may yield to the judgment of the chancellor *nisi* in equity, upon the facts, but not otherwise. There is no substance therefore in this ground of the motion for rehearing."

Nor do I think that sections 123 and 124 of the Act of 1913 (Laws 1913, p. 647) compel this court to consider the findings of the commission in a manner different from the rule above indicated. The first section, supra, has no reference to court procedure at all. It simply says that the orders of the commission are prima-facie lawful and reasonable. So is a judgment of a circuit court when appealed from to this court. There is the presumption of right action upon the part of the circuit court, until error is pointed out.

But this section has no reference to procedure in a statutory *certiorari* to determine the reasonableness of the order. If the commission fixed a given rate for freight, and I was resisting the payment of that rate, then the order of the commission would be prima-facie lawful in that proceeding. So too as to telephone and other rates, as well as other orders.

If in the case mentioned last above the order of the commission was offered to show the lawfulness of the rate, I could at least respond, if I might not go further, by showing that the rate had been declared unlawful and unreasonable by some court. So in my judgment this section does not affect the matter at all, but if it did, reasonable effect is given thereto by the rule we have established.

Now as to section 124. The rule we have established does no violence to this section. If this section applies to procedure here, our rule proceeds upon the theory that it must clearly appear that the order is unlawful or unreasonable. The section evidently applies to many kinds of attacks upon the order of the commission, and is not confined solely to the attack made by the statutory *certiorari* which brings cases, such as the present, to the circuit courts.

The majority opinion in Lusk v. Atkinson, 268 Mo. 109, uses some rather broad and forceful language, but when fairly interpreted, I take it, does not go further than Railroad v. Commission, 266 Mo. 1. c. 340 and 346.

All considered I think the rule established in Railroad v. Commission, 266 Mo., supra, is correct.

WOODSON, J. (concurring)—The question of practice mentioned in the opinion in this case, in paragraph one, is a moot one; its decision not being necessary for a proper disposition of the case. For the same reason I am unable to see upon what legal ground the cause can be transferred to Court in Banc. But independent of this, since my associates are freely dealing with *obiters,* I may add that section 111, Laws 1913, p. 641, is too plain in meaning to require or permit construction. It stands separate and alone, as one of procedure in this court, and in express terms provides that when a case reaches this court from the Public Service Commission *it shall be tried as a suit in equity.* There is no phrase in the law better known, or which has a more definite legal meaning, than it has. That statute contains no language akin to the idea that the findings of the commission are prima-facie

evidence of their correctness on procedure in this court. The equity practice is, and for centuries has been, for this court to defer somewhat to the findings of the chancellor, because of his better position to see the witnesses, and observe their conduct and demeanor upon the witness stand; but we have never abdicated our authority to make our own findings of fact, when deemed proper, from the record sent up. This is the sense in which the Legislature used the phrase mentioned, and that meaning should be carried out by this court.

I therefore concur in the result of the conclusions reached.