St. Louis-San Francisco Railway Company *v.* Lewis.

Opinion delivered July 10, 1922.

1. Public service commissions—review of orders.—Though the Railroad Commission is an administrative body, its actions in the regulation and control of public utilities are *quasi* judicial, and the circuit court on appeal acts judicially in the determination of the correctness of the orders made by the commission.

2. Railroads—depot—reconstruction.—Evidence heard by the Railroad Commission, on petition under Acts 1921, No. 124, for the construction of a new railway depot, *held* to establish that the plans for the reconstruction of the old depot submitted by the railway company were sufficient to provide adequate facilities, unless it was necessary to remove the depot to another location.

3. Public service commissions—necessity of removal of depot.— Where the Railroad Commission rejected the railway company's plans for reconstruction of its depot, without determining whether the removal of the depot to another place was necessary, the court, on reversing the order of the circuit court affirming the order of the Commission because the plans for reconstruction were sufficient unless removal was necessary, will not determine the

question of removal, leaving that question to be determined in the first instance by the Railroad Commission.

Appeal from Pulaski Circuit Court, Third Division; *Archie F. House,* Judge; reversed.

*W. T. Evans* and *Warner, Hardin & Warner,* for appellant.

The Railroad Commission is a ministeral body. In order to sustain the order made, it must appear that the facilities offered by the company are inadequate and unreasonable. 85 Ark. 12; *Id.* 284; 170 U. S. 269; 200 U. S. 562. The Commission cannot act arbitrarily. Cases *supra.* The facilities proposed by the company are in every way adequate and reasonable, and far better than those in some cities of three times the population of Fayetteville.

The reasonableness of the order is a question for the court to determine. 206 U. S. 1.

The order of the Commission is repugnant to the Fourteenth Amendment to the Constitution of the United States, and to sec. 8, art. 2 of our Constitution.

*J. V. Walker,* for appellee.

The Commission had power to order the construction of a new building and to prescribe the kind and capacity thereof, and the material to be used in the construction. *St. L. S. W. Ry. Co.* v. *Stewart,* ms. op.

The findings of the Commission are supported by the evidence. A comparison of the earning by the company at Fayetteville with cities much larger emphasizes the reasonableness of the findings of the Commission. Judicial notice of the population of cities will be taken. 31 L. R. A. 726; 16 L. R. A. 836; 15 L. R. A. 561; 47 L. ed. 346.

McCULLOCH, C. J. This appeal involves a controversy which arose in a proceeding instituted against appellant before the Railroad Commission of Arkansas concerning the building of a new station at Fayetteville. Appellees, citizens of Fayetteville, filed a petition before the Railroad Commission asking that appellant be re-

quired to construct and maintain an adequate building as a depot and station house for passengers and freight. Appellant appeared and responded to the petition, proposing to remodel the building now in use as a station and to improve and enlarge the facilities in that respect.

Appellant furnished plans and specifications of the improvements to be made, which contemplated the use of the walls and foundation of the old building, so far as the same could be used, and extensive enlargements of the building. The estimated cost of the contemplated improvements was shown to be about $68,000.

The Commission, after hearing the evidence and viewing the premises, made an order rejecting the plans proposed for repairing and improving the present passenger station at Fayetteville, and directing that appellant "file with this Commission on or before the first day of January, 1922, plans for the erection of a new passenger station at Fayetteville, Arkansas, said station to be constructed of brick and the plans to provide for suitable and adequate waiting-rooms for white and colored passengers, with a modern heating plant, said station to be in keeping with the importance of the city of Fayetteville and the business transacted by the railroad company at said station."

The order of the Commission concluded with a recital that jurisdiction of the matter was retained by the Commission "for the purpose of making a final order, or orders, for the erection of said passenger station after the plans have been submitted and approved, and for such further orders as may appear just and necessary."

The company appealed from this order to the circuit court of Pulaski County, and the cause was there heard on the record made before the Commission, the trial resulting in a judgment of the circuit court affirming the order of the Commission.

These proceedings were instituted and prosecuted before the Commission pursuant to the statute (act No. 124, Acts of 1921) giving jurisdiction to the Railroad

Commission and providing for an appeal to the circuit court from the orders of the Commission, and also an appeal from the circuit court to this court.

The Railroad Commission is an administrative body, but its actions in the regulation and control of public utilities are *quasi*-judicial, and the circuit court on appeal acts judicially in the determination of the correctness of the orders made by the Commission. *St. L. S. W. Ry. Co.* v. *Stuart,* 150 Ark. 586.

There is no conflict in the statements of the witnesses in regard to the facts, though different deductions may be drawn from some features of the evidence.

Fayetteville is a city of about 5,500 inhabitants, and the State University is located in the western side of the city, the business part of the city being situated on the east side. Dickson Street, running east and west, is the one principally traveled between the University and the business district, and the railroad station is situated at the intersection of appellant's railroad tracks with this street, the station being on the east side of the tracks and on the north side of Dickson Street. There is a considerable residential section west of the railroad, and the travel along Dickson Street is heavy.

The undisputed testimony shows that there is considerable congestion in travel at the railroad crossing on account of the numerous tracks and frequent passage of trains—main line trains, and freight cars being switched.

There are six side-tracks crossing Dickson Street east of the station.

The present building is about forty years old, and is constructed of brick with stone foundation. It is thirty feet wide and one hundred seventy-two feet long, sixty-seven feet on the south end being devoted to passenger facilities, and the remainder to freight. There is a platform twenty feet wide on the west side of the station, running its full length, but a bay window extending out from the building narrows the space so that it is dif-

ficult for passengers to pass along there when trains are receiving or discharging passengers.

One of the side-tracks east of the station runs parallel with the building and cuts off the approach to the east side of the building. This situation is caused by the fact that the building is used for freight purposes, and it is necessary to have a track running close to the platform of the freight station to receive and unload freight.

Most of the testimony introduced by the petitioners was directed to the state of congestion on account of the numerous tracks and the amount of traffic along Dickson Street, and also the insufficient approaches to the station building and the insufficiency of the platform.

It is not contended, on behalf of appellant, that the present facilities are adequate or suitable to the necessities of the railroad traffic and business at the city of Fayetteville. The contention is that the plan of reconstructing and enlarging the old building, separating the freight station from the passenger station and changing the location of the tracks, will be amply sufficient to afford adequate and convenient facilities in keeping with the railroad business at that place, and that the construction of a new building is entirely unnecessary and will cost the company nearly double the amount of the cost of reconstructing the old building in accordance with the proposed plans.

It is shown that the ground owned and occupied by the railroad company at the station in Fayetteville fronts 250 feet on Dickson Street and runs north over 600 feet, narrowing down to a shorter distance about midway of the length of the lot.

The proposal of the company is to rebuild the passenger station, using the stone foundation and walls, with certain changes, converting the whole of the present station building into a passenger station, and remodel it from one end to the other. The plan contemplates the construction of a new freight house 140 feet long by 30 feet wide, north of the passenger station, with a plat-

form on the west side along the main track extending the full length of both buildings, which would give a platform about 600 feet long, parallel with the main track, which is to be removed westward five feet so as to give that much additional platform space. The bay window referred to is to be eliminated, and this will make a platform of unobstructed width of twenty-five feet between the walls of the building and the main track. The sidetrack running along the platform on the east side of the station is to be removed eastward from the passenger station so as to give space for a driveway of macadam sixty feet wide and two hundred feet in length, unobstructed by any of the side-tracks.

Specifications for the size and inside arrangements of the remodeled building are shown in detail, and it is not contended in any quarter that the capacity of the building is insufficient for the volume of railroad travel and business at that place.

The evidence shows beyond question that, unless the station is to be removed from the exact spot where the old building is located, the proposed plans for remodeling the old building and the construction of a new freight house are entirely adequate, and the construction of a new building at increased cost is unnecessary. In other words, our conclusion is, leaving out the question of removal of the station, that the order of the Railroad Commission is not supported by evidence. If the station is not to be removed from that spot, then the company should be permitted to carry out its proposed plans.

It will be noted from the language of the Commission's order that it did not pass on the question of removal, though most of the testimony introduced by the petitioners was, as before stated, directed to the question of inconvenience to travel along the street and to the station. The Commission, according to the language used in the order, merely decided that a new building must be constructed, and, as we understand, the question of location is to be hereafter decided. Now, this was

not the proper order to make, for, as we have already seen, there is no necessity for a new building unless there is to be a removal. Of course, if the removal of the station is ordered, then a new building is necessary, for the old one would be abandoned, but until the question of removal or non-removal is settled, the railroad company could not be bound by an order to construct a new building.

It would not be proper for us to decide, in the first instance, the question of the necessity for the removal, as the parties are entitled to have this question primarily passed on by the Commission. In speaking of the question of removal, it is not necessarily meant a removal to a distant location, but refers, as well, to the question of removal to another spot on the same property now occupied by the company for station purposes.

The present order is erroneous, but the matter is still before the Commission, and there may be a further hearing upon the original petition of the property owners and the plans proposed by appellant to determine the whole question whether or not there should be a removal from the spot on which the present building is located.

This inquiry will then draw into question the location as well as the building or remodeling of the station at Fayetteville, and the reversal of the judgment and quashing of the present order of the Railroad Commission will be without prejudice to a further hearing of the whole matter.

What we now hold is that, without a decision upon the question of removal, the order requiring the abandonment of the old building and the construction of an entirely new building is unnecessary, and that the proposed plans for remodeling and changing the old facilities are adequate unless a removal is necessary.

The judgment of the circuit court is therefore reversed and the cause remanded, with directions to quash the order of the Railroad Commission, without prejudice to further hearing before the Commission, upon all the

questions relating to improved station facilities at Fayetteville.

HUMPHREYS, J. (dissenting opinion). According to the plat filed in the case the depot is without ingress or egress on the west, north and east, the only entrance for passengers being from Dickson street on the south. This street runs east and west and the old depot is close to the street, so close, in fact, that all incoming and outgoing trains, in stopping at the depot, block the street. This street is the main thoroughfare, and when blocked causes much congestion and great inconvenience to the general public. The testimony reflects that those passing from the east to the University, and vice versa, are frequently delayed from five to fifteen minutes. The situation, as reflected by the testimony, may be more clearly described as saying that the depot is "bottled up." The testimony also reveals the great extent of the passenger traffic and the enormous income received by the company from it. This is due to the fact that trains from four directions center there. The income for a number of years far exceeded the income in larger cities. The testimony reflects that the congestion in and immediately around the depot causes great confusion and inconvenience. The repair of the old depot necessarily means the retention of the present site and the use of more space immediately around it for building purposes. It is true the proposed plan contemplates the removal of the west track a few feet to the west, and of the track east of the depot entirely, so as to give more platform space and a driveway on the east. The driveway, however, is to have no outlet to the north, so the changed situation will necessarily be the same, with only one street entrance. The depot, including the driveway and platforms, will be "bottled up." It is apparent, from the record made, that the congestion and dangers incident to the situation will not be relieved by the repair of the old depot in the manner suggested. The trend of the major part of the testimony was in this direction, so I

am convinced that the controlling issue in the case was, whether practical to repair the depot where it now sits. The order of the Commission was to build a new depot, necessarily determining, in the light of the testimony, that it should be located at a more convenient place on the lot owned by the company. It is quite apparent that the building could be constructed on the east side of the lot, which would give two street entrances; and far enough toward the north so that incoming and outgoing trains could stop without blocking Dickson Street. The physical facts are undisputed, and the testimony tending to show the congestion and inconvenience were fully developed. It is therefore unnecessary to remand the case for further evidence upon that issue. The additional testimony would necessarily be cumulative in nature. It seems to me that the record made fully sustains the order of the Commission. Mr. Justice Wood desires to be noted as concurring in the views thus far expressed.

In addition to the views expressed, I am of the further opinion that the plans presented by the company for repairing the depot are not commensurate with the income from passenger traffic and the importance of the city shown by the testimony.