LAND, J.
 

 Plaintiff railway company has appealed from a judgment (enforcing order No. 2!W of defendant (Commission requiring the erection of a new depot at Monroe, La., and attacks the legality and validity of said J "order. The first passenger station at Monroe was (constructed about 1886. That station, however, was partially destroyed by fire, and was rebuilt and enlarged in 1911 or 1912, at a cost -of $11,000 or $12,000.
 

 The building is located on a half square of ground, and is a frame structure, ou a concrete foundation. The building consists of a baggage and express room, ticket agent’s office, colored waiting room, with 32 seats for passengers, a main white waiting room with 35 s?jats, and a ladies’ waiting room, with 15 seals and a lounge. It is electrically lighted, steam heated, and has sanitary closets. There is a wooden platform around the entire building, and it is protected by a projected roof. The steel train shed is over 300 feet in length, with a brick platform under it, serving as an approach to the depot.
 

 The present value of the station, including the shed, is $24,000, and, if demolished, the loss would be entire. There are four trains in each direction west of Monroe and three trains in e'ach direction east of Monroe, or seven trains that depart from the Monroe station and seven trains that arrive there daily.
 

 Plaintiff railway company maintains a separate depot at West Monroe.
 

 It appears from the testimony that there are no funds available for the building of a. new depot, at a cost estimated at not less; than $30,000 to $40,000, and that plaintiff' railway company would have to borrow the; money to secure the necessary means for this; purpose.
 

 The present depot at Monroe is in a good', state of repair. The baggage and express; room, ticket «office, and waiting rooms are; reasonably sufficient, under ordinary circumstances, to serve their purposes.
 

 Even if it were necessary to give the waiting rooms a larger capacity, this could be accomplished at a reasonable cost by extending them.
 

 During the last year, and especially during the last six months, there has been a decided decrease in the passenger business of plaintiff railway company on the entire line of the Vicksburg, Shreveport & Pacific Railway; the city of Monroe contributing its proportion of the decrease'.
 

 Even if we grant that the Monroe depot is not an up-to-date structure, and that a modern building would be more aesthetic in appearance and more in keeping with the spirit of progress in the growing city of Monroe,
 
 *1031
 
 yet there are certain legal impediments, as we see it, to the execution of the order of the Public Service Commission, requiring the demolition of the old depot at Monroe, and the erection of a new depot and increased passenger facilities.
 

 It must be conceded that if the present depot at Monroe was clearly inadequate, and plaintiff company had available funds for the purpose, yet declined arbitrarily to erect the necessary building and to afford the needed passenger facilities, said company could be compelled legally to do so under the order of the Public- Service Commission, and that such "order under such circumstances would be reasonable and justified.
 

 It must be conceded also that the commission has
 
 t
 
 and may exercise all necessary power in its supervision, regulation, and control of all common carrier railroads. Article 6. § 4, Const. 1921.
 

 But the power to regulate does not include the power to destroy. 14th Amendment of U. S. Constitution; Smyth v. Ames, 18 S. Ct. 418, 169 U. S. 466, 42 L. Ed. 819; St. Louis & S. F. R. Co. v. Gill, 15 S. Ct. 484, 156 U. S. 649, 39 L. Ed. 567.
 

 As the public power to regulate railways and the private ownership of such property coexist and do not the one destroy the other, it has bfeen settled that the right of ownership of railway property, like other property rights, finds protection in constitutional guaranties, and therefore whenever the power of regulation is exerted in such an arbitrary and unreasonable way as to cause it to be in effect not a regulation, but an infringement upon the right of ownership, such an exertion of power is void, because repugnant to the due process and equal protection clauses of the Fourteenth Amendment.
 

 Atlantic Coast Line R. Co. v. North Carolina Corporation Commission, 27 S. Ct. 585, 206 U. S. 1, 51 L. Ed. 933, 11 Ann. Cas. 398.
 

 Plaintiff railway company is engaged in interstate trafile and transportation of passengers.
 

 Section 15a of the Interstate Commerce Act, as amended by section 422 of Transportation Act of 1920 (U. S. Comp. St. Ann. Supp. 1923, § 8583a), provides that the Interstate Commerce Commission shall prescribe just and reasonable rates, so that the carriers under honest, efficient, and economical management, and reasonable expenditures for maintenance of way and structure and equipment, can earn a fair return upon the aggregate value of their property.
 

 It cannot be successfully maintained that the destruction of a depot in good repair and of the value of $24,000, and reasonably adequate for the accommodation, of passengers, and the construction of a new depot at a large cost, is either efficient and economical management or a reasonable expenditure. St. Louis, I. M. & S. Ry. Co. v. State, 111 P. 396, 114 P. 1096, 28 Okl. 372; A. G. S. R. Co. v. Alabama Public Service Commission et al., 97 So. 226, 210 Ala. 151; St. Louis & S. F. Ry. Co. v. Lewis et al., 243 S. W. 63, 154 Ark. 478; State ex rel. Wabash R. Co. et al. v. Public Service Commission et al., 196 S. W. 369, 271 Mo. 155.
 

 It is therefore ordered that the judgment appealed from be annulled and reversed. It is now ordered that the order of the Louisiana Public Service Commission of date June 21, 1924, requiring plaintiff railway company to erect a new depot at the city of Monroe, La., be rescinded and set aside.
 

 THOMPSON, J., recused.