(No. 6624.   April 20, 1939.)

STATE ex Rel. J. W. TAYLOR, Attorney General, Respondent, v. UNION PACIFIC RAILROAD COMPANY, a Corporation, and OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellants.

[89 Pac. (2d) 1005.]

Geo. H. Smith, H. B. Thompson and L. H. Anderson, for Appellants.

Ariel L. Crowley, for Respondent.

GIVENS, J.—This appeal is from an order of the Public Utilities Commission requiring defendants to build a new depot at Soda Springs, the county seat of Caribou county, a city of the second class of approximately 1007 people, serving a community of about 5000.

The present depot, built in 1884, a frame building with a waiting room 18 by 24 feet and seating capacity for 24 persons, ticket and express office in the west end and a freight compartment in the east end, is situated 257 feet east from Dillon Street and 100 feet west from First East Street and 12 feet south of the main line track, the space between icy and slippery in winter. About 60 feet southwest is a large warehouse, and two side or "team tracks" run parallel to and south of the depot. There is no evidence of any repairs having been made other than an occasional painting, the last about 1928, and the building is substantially in the same condition as twenty years ago and is one of the oldest and most unkempt buildings in the city. The condition and soundness of the foundation and structural frame-work is disputed.

There is running water therein but no sewer connections and the water from the drinking fountain in the waiting room drains to the ground under the building creating an offensive odor. The closest sewer connection, laid in 1919, is about a block distant. The building is sporadically and often insufficiently heated in cold weather and people usually wait for trains at the hotel rather than at the depot. There are no separate waiting rooms for men and women or for smokers and non-smokers. There is also evidence that the roof is in bad condition, that it leaks and that daylight can be seen through it in many places, and the electric wiring is neither modern nor standard. Refuse of various kinds from floor sweepings, has collected under the freight part of the depot and the chimney rests on brackets on the wall surrounded by a wooden box.

The only toilets are outside, old-fashioned privies, unlighted at night, about 120 feet from the depot across the south team and switch tracks. The two compartments thereof are not marked as to men or women, one kept locked with

key at the ticket office. Replacement of the toilets has been on appellants' budget for two years. Appellants' accounting system provides a depreciation fund of 4 per cent of the valuation of buildings up to 75 per cent thereof.

Appellants offered evidence to the effect that by extending the present depot some 10 or 12 feet west, adequate toilet facilities, segregated as to men and women, could be installed. The only evidence indicating that paint could not be satisfactorily applied was a statement that the wood fibre had so disintegrated that paint could do no good; there was, however, evidence to the contrary.

Appellants further contend rebuilding is unjustified by the business handled at the depot as follows during the first 10 months in 1937: Outgoing freight, 2336 car loads and 212 tons L. C. L., a total freight collection of $328,168.28; freight received, 388 cars, 915 tons L. C. L., a total collection of $57,759.39; number of local tickets sold, 1285; interline tickets sold, 108, a total of 1393 passengers and charge of $5,804.61; total express receipts, $5,026.76; Western Union messages forwarded, 1656; Western Union messages received 1942, value, $526.74, thus making a gross revenue during the ten-month period reported of $397,285.78.

Mr. Matthews, mayor of the city, testified Mr. Plumhof, general manager of appellant Oregon Short Line Railroad Company, stated in a conference with the city officials prior to the hearing before the commission he would do what he could to get a new depot, but that business conditions did not warrant expansion at the present.

The main remediable defects thus apparent are need of paint, inside and out, repair and kalsomine of the plastered walls, adequate and proper inside toilets and rest room facilities, which, with the drinking fountain, should be connected with the city sewer, repair of siding and the roof, and, while not a matter of repair, adequate and timely heat in the waiting room.

There are two other pertinent factors: First, that the present building is only 10 or 12 feet from the main line track. Repair of the building, of course, would not remedy this situation, and space between the main line and south

side tracks would not permit removal south, and though there was evidence that no accident had occurred because of this situation, there was evidence and is authority that this is not sufficient safe clearance. (*In re New Depot at Ada*, 135 Minn. 19, 159 N. W. 1089.)

The second factor is the suggestion, if not the implication and almost direct assertion on the part of appellants, that these repairs, as suggested by it, if made, would for a considerable time, if not indefinitely, postpone the erection of a new depot. Reference as to what plaintiff desired, was made in the testimony to depots at Shoshone and American Falls, etc., with the conclusion that a depot as there constructed would be adequate at Soda Springs, and while a cost of $25,000 or $30,000 was suggested, neither the cost of those depots or any plan or detailed figures were submitted indicating that a new depot at a less cost could not be constructed. The order required the new depot to be constructed ninety feet east of Dillon Street. In view of the location of the warehouse southwest of the present depot this location would not seem wise because of interference with clear vision east along the railroad track, of travelers proceeding north on Dillon Street.

While the commission has the jurisdiction, right and authority to require adequate facilities, and, if necessary, to order a new depot, the test of such order is its reasonableness and whether it is confiscatory. Regulation may not extend to management and control, and though facilities must be commensurate with business done and progress of the community, such required facilities must be consistent with and restrained by economy of operation within the realm of businesslike principles of income and expenditures. (*Alabama Great Southern R. Co. v. Alabama Public Service Commission*, 210 Ala. 151, 97 So. 226, 228; *St. Louis-San Francisco Ry. Co. v. Lewis*, 154 Ark. 478, 243 S. W. 63; *Lewisville & N. R. Co. v. Railroad Commrs.*, 63 Fla. 491, 58 So. 543, 44 L. R. A., N. S., 189; *State v. Public Service Com.*, 271 Mo. 155, 196 S. W. 369; *State v. Florida East Coast Ry. Co.*, 67 Fla. 83, 64 So. 443; *Chicago R. I. & P. Ry. Co. v. State*, 67 Okl. 10, 168 Pac. 239, L. R. A. 1918C, 492.)

■ While civic pride is laudable and commendable, and we can well sympathize with the citizens of Soda Springs in desiring a new depot, particularly in view of modern and newly constructed business buildings, and court house, hospital and school, which taxes paid by appellant helped to build, the general effect upon those who must ultimately bear the burden of expenditures by the railroads, namely, shippers and passengers, must be taken into consideration. If the present depot can be satisfactorily repaired at a cost of not to exceed approximately $3,000, and as repaired be reasonably as adequate as a new structure, the difference between such repairs and the cost of a new depot as contemplated by this order, though not specifically set forth therein, of $25,000 or $30,000, is so disproportionate as to be unreasonable and the necessity thereof is not sustained by the record. (*Chicago R. I. & P. Ry. Co. v. State,* 117 Okl. 175, 245 Pac. 656, 659; *State v. Public Service Com., supra; Petition of Patrons of Great Northern Ry. Co.,* 66 N. D. 541, 267 N. W. 723; *St. Louis I. M. Ry. Co. v. State,* 28 Okl. 372, 111 Pac. 396, 114 Pac. 1096; *St. Louis-San Francisco Ry. Co. v. Lewis, supra; Alabama Great Southern R. Co. v. Alabama Public Service Com., supra; Vicksburg S. & P. Ry. Co. v. Railroad Com.,* 132 La. 193, 61 So. 199, Ann. Cas. 1914C, 1168; *State v. Minneapolis & St. L. R. Co.,* 76 Minn. 469, 79 N. W. 510, 511.)

■ Appellants make much of the effect of the depressed financial condition as justification for not being willing at this time to build a new depot though such has been sought since 1916, and at that time appellants themselves contemplated erecting a new depot and made plans for that purpose. Though we may take judicial notice of depressions, *Great Northern R. Co. v. Weeks,* 297 U. S. 135, 149, 56 Sup. Ct. 426, 80 L. ed. 532, 533, 541; *Galveston Elec. Co. v. Galveston,* 258 U. S. 288, 42 Sup. Ct. 351, 66 L. ed. 678; *Atchison T. & S. F. R. Co. v. United States,* 284 U. S. 248, 260, 52 Sup. Ct. 146, 76 L. ed. 273, 280; *Los Angeles G. & E. Corp. v. Railroad Com.,* 289 U. S. 287, 53 Sup. Ct. 637, 77 L. ed. 1180, 1195, such general considerations without detailed information as to profit and loss at this depot and in connec-

tion with it as a facility, and in general as to all of appellants' operations, are not sufficient to show, aside from the discrepancy between repairs and a new building, why, in view of the dilapidated condition of the present building, relief should not sooner have been accorded, or now be ordered. (*State v. Corvallis & E. R. Co.*, 59 Or. 450, 117 Pac. 980, 986; *Midland Valley R. Co. v. State*, 29 Okl. 777, 119 Pac. 413; *In re New Depot at Ada, supra; Vicksburg S. & P. Ry. Co. v. Louisiana Public Service Com.*, 160 La. 1028, 107 So. 894.)

■■ The commissioners, of course, are the fact-finding body of the state to, in the first instance, investigate and determine situations of this kind, and while its findings of fact are binding upon the court, its findings and conclusions must be sustained by competent evidence. (Sec. 59–629, I. C. A.; *Murray v. Public Utilities Com.*, 27 Ida. 603, 618, 150 Pac. 47, L. R. A. 1916F, 756; *Oregon Short Line R. Co. v. Public Utilities Com.*, 47 Ida. 482, 276 Pac. 970; *State v. Minneapolis & St. L. R. Co., supra.*)

The order is therefore reversed and remanded with directions that the commission receive further evidence as to the advisability and adequacy of repair instead of a new depot, and conclude accordingly.

Costs to await final outcome.

Ailshie, C, J., and Morgan, J., concur.

Budge, J., concurs in the conclusion reached.

Holden, J., sat at the hearing but did not participate in the decision of the case.