532 P.2d 936

**BURLINGTON OUT NOW, Plaintiff-Appellant,**

**v.**

**BURLINGTON NORTHERN, INC., and Idaho Public Utilities Commission, Defendants-Respondents.**

**In the Matter of the INVESTIGATION OF the PROPOSED BURLINGTON NORTHERN (B.N.) CLASSIFICATION AND SWITCHING YARD NEAR RATHDRUM ET AL.**

**No. 11568.**

Supreme Court of Idaho.

Jan. 23, 1975.

Scott W. Reed, Coeur d'Alene, for plaintiff-appellant.

W. Anthony Park, Atty. Gen., Gary L. Montgomery, Asst. Atty. Gen., Boise, for defendant-respondent Idaho Public Utilities Commission.

Woodrow L. Taylor and R. Paul Tjossem, Seattle, Wash., E. L. Miller, Coeur d'Alene, for defendant-respondent Burlington Northern, Inc.

DONALDSON, Justice.

Respondent Burlington Northern, Inc.,[1] in its overall coordination plan for railroad facilities, has programmed for the construction of a new classification and marshaling yard at Hauser Lake on the Rathdrum Prairie in Kootenai County. The purpose of the yard (largest west of Chicago and Minneapolis) is to more effectively expedite the handling of transcontinental traffic flowing through the Spokane Gateway. It will encompass an area six miles in length and seventy-six tracks in width, carrying an expected completion cost of forty million dollars and an expected movement capacity of two thousand cars per day.

Appellant Burlington Out Now (an unincorporated association representing certain residents within the proposed yard area) organized itself in opposition to the project.

The facts leading to appeal can be summarized as follows:

In 1972, Burlington Northern requested appropriate zoning and planning for the yard from Kootenai County planning officials. The Hauser site was designated, and a comprehensive map plan and ordinance providing for the above location and construction as a planned unit development

---

1. Burlington Northern, Inc., is the resultant merger of Northern Pacific Railway; Great Northern Railway; Spokane, Portland & Seattle Railway; Chicago, Burlington & Quincy Railroad; and Pacific Coast Railroad.

was proposed and published. However, shortly before adoption the Kootenai County Planning and Zoning Commission rejected the plan. The Planning and Zoning Commission then designated the area agricultural, and the Board of County Commissioners then proceeded to adopt a zoning ordinance and map plan in conformity with that designation.

Burlington Northern brought suit challenging the validity of the zoning. The district court declared the zoning void due to irregularity in proceedings and failure on the part of the county to adequately provide for transportation facilities as required by state law. No appeal was taken.

In conformity with the above decision, the county adopted a new comprehensive plan and zoning ordinance which allowed the classification yard as a planned unit development. That ordinance was not challenged and the yard is presently under partial construction.

Coincident with the above zoning, Burlington Northern entered into negotiations with the Post Falls Highway District for the alteration of existing roads crossing the yard area. Subsequent to public hearing, the two parties reached agreement and the rearrangement plan was incorporated into a Judgment and Decree of Appropriation pursuant to condemnation proceedings instituted by the railroad. The court in that condemnation proceeding entered Findings of Fact and Conclusions of Law in pertinent part as follows:

"The Court finds that as a result of the merger of the various railroad companies into the plaintiff corporation, the plaintiff needs and is required, in the operation and conduct of its business, to establish a railroad classification yard as near to Spokane as is geographically possible, having in mind the criteria necessary for the erection, construction, and operation of the classification yard, considering traffic, topography, freight rates, charges to shippers, traffic routes and operation of a classification yard. Engineeringly the location of the classification yard at Hauser Lake, Idaho, is prudent and necessary in that there exists at the site the necessary topography, main line access and the grade for the construction and operation of a classification yard."

No appeal was taken in the condemnation proceedings to this Court.

The appellant, having been unsuccessful in stopping the zoning or road plan changes, next petitioned respondent Public Utilities Commission to assert jurisdiction over the matter. The Commission did so, and subsequent to public hearing, entered Findings of Fact [2] and the following Order:

"IT IS THEREFORE ORDERED that the request of petitioners for study

---

2.                        "I.

"THAT Burlington Northern, Inc., is a public utility operating within the State of Idaho and subject to the jurisdiction of this Commission.

"II.

"THAT under Sections 61–515, 61–508, 61–302, 61–501 and 62–304, Idaho Code, this Commission has jurisdiction over the construction and location of the Burlington Northern classification and switching yard near Rathdrum-Hauser Lake, Idaho.

"III.

"THAT the Commission would not have authority to order the relocation of the classification yard for any and all environmental reasons.

"IV.

"THAT any order requiring Burlington Northern to relocate the classification yard

would have to be based on real and substantial issues of health, safety, service, comfort or convenience of patrons, employees, or the public.

"V.

"THAT the local authority (Post Falls Highway District) entered into a written agreement with Burlington Northern for the manner in which railroad crossings at the classification yard will be constructed and maintained.

"VI.

"THAT the question of the proper zoning classification of the proposed site was tried before the District Court of the First Judicial District of the State of Idaho in and for the County of Kootenai.

"VII.

"THAT Burlington Northern, Inc., brought condemnation proceedings to acquire certain

of alternate sites, and for relocation of the Burlington Northern classification yard at Rathdrum-Hauser Lake, Idaho, be and the same is hereby denied."

Petition for rehearing was filed, considered and rejected, whereupon this appeal was perfected.

■ The appellant contends that the Commission erred in failing to conduct a full scale hearing and investigation into the question of whether the proposed construction of the Burlington Northern classification yard is in the public interest. We disagree.

Idaho Code § 61–526 provides in pertinent part:

"Certificate of convenience and necessity.—No street railroad corporation, gas corporation, electrical corporation, telephone corporation or water corporation, shall henceforth begin the construction of a street railroad, or of a line, plant, or system or of any extension of such street railroad, or line, plant, or system, without having first obtained from the commission a certificate that the present or future public convenience and necessity require or will require such construction * * *."

This section sets forth specifically those public utilities which must obtain a certificate of public convenience and necessity from the Commission before commencing construction of a new plant. By definition,[3] a street railroad corporation is separate and distinct from a railroad corporation. Therefore, the strict standards applied to I.C. § 61–526 corporations do not apply. Were they applicable, the Commission would have been faced with an entirely different situation. It would have been required to conduct a full scale hearing and investigation, taking into consideration all of the factors normally considered in an application for a certificate of convenience and necessity. Under the present status of public utility law in Idaho, the Commission has no authority to conduct such a hearing in the case at bar. Therefore, the less stringent fact finding process applied by the Public Utilities Commission was adequate.

■ The remaining question is whether the Commission has any jurisdiction over the classification yard under other provisions of the Public Utilities Law.

I.C. § 61–515 provides:

"*Safety regulations.*—The commission shall have the power, after a hearing had upon its own motion or upon complaint, by general or special orders, or regulations, or otherwise, to require every public utility to maintain and operate its line, plant, system, equipment, apparatus, tracks and premises in such manner as to promote and safeguard the health and safety of its employees, passengers, customers and the public, and to this end to prescribe, among other things, the installation, use, maintenance and opera-

---

roadways for construction of the classification yard in the same Court, in which local authorities and protestants herein were represented, and no appeal was taken from that decision.

"VIII.

"THAT the testimony presented in this proceeding did not provide any convincing or persuasive evidence that the health and safety of local residents would be endangered by construction of the yard at the proposed location.

"IX.

"THAT the Commission has found nothing in the record in this proceeding which would justify ordering studies of alternate sites with a view to relocation of the proposed yard."

3. I.C. §§ 61–108 and 61–110 provide:

"61–108. Street railroad.—The term 'street railroad' when used in this act includes every railway * * * by whatsoever power operated, being mainly upon, along, above or below any street, avenue, road, highway, bridge or public place within any city or county, or city or town * * * but the term 'street railroad' when used in this act shall not include a railway constituting or used as a part of a commercial or interurban railway."

"61–110. Railroad.—The term 'railroad' when used in this act includes every commercial, interurban and other railway other than a street railroad * * *."

tion of appropriate safety or other devices or appliances, including interlocking and other protective devices at grade crossings or junction and block or other systems of signaling, to establish uniform or other standards of equipment, and to require the performance of any other act which the health or safety of its employees, passengers, customers or the public may demand."

I.C. § 61–302 provides:

*"Maintenance of adequate service.*—Every public utility shall furnish, provide and maintain such service, instrumentalities, equipment and facilities as shall promote the safety, health, comfort and convenience of its patrons, employees and the public, and as shall be in all respects adequate, efficient, just and reasonable."

The above two sections give the Commission authority to assume jurisdiction over the proposed yard if it has reason to believe there is a real or genuine threat specifically to the health or safety of the public. Jurisdiction therefore was properly asserted.

█ The Commission found that the testimony presented did not provide any convincing or persuasive evidence that the health of local residents would be endangered by construction of the yard. On appeal to this Court from an order of the Public Utilities Commission, findings of the Commission are presumptively correct [4] and will be upheld if there exists competent evidence upon which such findings can be based.[5] The record discloses ample evidence that the zoning requirements, and pollution and health regulations will be met. In addition, the record discloses that a plan has been agreed upon for road rearrangement, safer highway-railway crossings and grade separations.

In light of our earlier discussion that Burlington Northern, Inc. falls outside the scope of I.C. § 61–526 thereby excluding the strict test required for obtaining a certificate of convenience and necessity, we cannot say the Commission abused its discretionary power in entering the above order.

We have considered the appellant's other arguments and find them to be without merit.

Order affirmed. Costs to respondents.

McQUADE, C. J., and SHEPARD and McFADDEN, JJ., concur.

BAKES, Justice (concurring specially):

I cannot subscribe to the statement in the majority opinion that "[u]nder the present status of public utility law in Idaho, the Commission has no authority to conduct such a hearing in the case at bar." While it is true that the statutes defining the rights and duties of the Public Utilities Commission do not require it to undertake investigatory hearings in this kind of case as, e. g., I.C. § 61–622 does in the case of public utilities' requests for an increase in rates, that does not mean that the commission has no authority to proceed with a hearing upon this matter. I.C. § 61–501 vests in the commission "power and jurisdiction to supervise and regulate every public utility in the state and to do all things necessary to carry out the spirit and intent of the provisions of this act." I.C. § 61–515 grants to the commission "the power, after a hearing had upon its own motion or upon complaint * * * to require every public utility to maintain and operate its line, plant, system, equipment, apparatus, tracks and premises in such manner as to promote and safeguard the health and safety of its employees, passen-

4. Application of Boise Water Corporation, 82 Idaho 81, 86, 349 P.2d 711 (1960); Nez Perce Roller Mills v. Public Utilities Commission, 54 Idaho 696, 698, 34 P.2d 972 (1934).

5. Application of Union Pacific Railroad Co., 81 Idaho 300, 310, 340 P.2d 1103 (1959); State ex rel. Taylor v. Union Pacific Railroad Co., 60 Idaho 185, 192, 89 P.2d 1005 (1939); Nez Perce Roller Mills v. Public Utilities Commission, *supra*.

gers, customers and the public . . . ." These two sections are sufficient grants of statutory authority to allow the commission, as urged by its dissenting member, to undertake a full-scale investigation of the effects of the proposed railroad yard on the public "health and safety" and to "supervise and regulate" the utility as it finds it necessary to protect the public and serve the public interest.