THE STATE ex rel. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION OF STATE OF MISSOURI.

Division Two, June 8, 1922.

1. **APPEAL: Order of Public Service Commission: Findings: Trial De Novo.** On an appeal from the judgment of the circuit court sustaining an order of the Public Service Commission directing a

State ex rel. v. Public Service Commission.

railroad company to stop two of its interstate trains at a certain point for the purpose of taking on and discharging passengers, the proceeding is treated as a suit in equity, and the Supreme Court may make its own findings of fact.

2. **STOPPAGE OF TRAINS: Interstate Commerce: Power of State.** It is competent for the State to require adequate local facilities, even to the stoppage of interstate trains; yet when local demands are adequately met the obligation of the railroad is performed, and the stoppage of interstate trains by order of the State becomes an improper and illegal interference with interstate commerce. While the State may regulate, it can do nothing which will directly burden or impede the interstate traffic of an interstate carrier, or impair the usefulness of its facilities for such traffic.

3. ————: ————: **Adequate Facilities: Trains of Another Road.** Prior to 1920 two of relator's interstate trains stopped on flag at Festus, and passengers could leave upon one of them at 6:25 in the morning and arrive in St. Louis at 7:55, and returning could leave St. Louis at nine o'clock in the evening and arrive at Festus at 10:20, and the inhabitants seek to compel relator to stop said trains at Festus, and the Public Service Commission made an order requiring them to stop. The evidence shows that two other of relator's trains leave Festus for St. Louis at eleven in the morning and 7:55 in the evening, and returning arrive at Festus at 9:18 in the morning and 5:45 in the evening; that another railroad runs two trains each way, so that there are four trains each way every day, all of which stop at Festus to receive and discharge passengers; and that it is only one mile from the station at Festus to the station at Crystal City, that the two stations are connected with a concrete sidewalk, that there are transportation facilities between the two, and that relator's two interstate trains stop at Crystal City. *Held*, that the inhabitants of Festus are amply supplied with facilities for the accommodation of the traveling public, and that the stoppage of the two interstate trains would be simply an addition to ample facilities already provided.

4. ————: ————: ————: **According to Corporate Entities: Convenience.** Under modern facilities a distance of one mile or two miles cannot be counted as an inconvenience in reaching railroad stations; and where two towns are adjoining municipalities and for all practical purposes constitute one continuous city, although relator maintains a station in each, one mile apart, and stops its interstate trains at one of them, a requirement that the trains must stop at both, based on the mere theory of separate corporate entities and the convenience of the traveling public, cannot be upheld.

5. ———: **Burden on Interstate Commerce.** Where it appears that the company is required to maintain fast schedules because of the rivalry of competing lines and for the purpose of making connections for its passengers and the mail at St. Louis and Memphis, and the time required to stop its interstate trains at a town on its route endangers its schedule and interferes with its traffic, the compulsory stoppage of its said trains at said town, which is already supplied with ample facilities for the accommodation of its inhabitants and the traveling public, constitutes an unlawful regulation and burden upon interstate commerce.

Appeal from Cole Circuit Court.—*Hon. John G. Slate,* Judge.

REVERSED.

*W. F. Evans, E. T. Miller,* and *A. P. Stewart* for appellant.

(1) The order of respondent, affirmed by the circuit court, is arbitrary, unjust, unreasonable and excessive, and is without warrant on the record. (2) The record conclusively showing that the inhabitants of Festus are afforded ample facilities for local travel between said point and St. Louis, without the stopping of appellant's interstate passenger trains, the order of respondent, affirmed by the circuit court, requiring the stoppage of said trains at Festus, becomes a direct burden upon and an unlawful interference with interstate commerce, and is, therefore, void because in violation of and in conflict with Section 8 of Article I of the Constitution of the United States. St. Louis-San Francisco Railway v. Pub. Serv. Comm., 254 U. S. 535; Ill. Cent. Railway Co. v. Illinois, 163 U. S. 142; Cleveland Railway Co. v. Illinois, 177 U. S. 521; McNeill v. Southern Railway Co., 202 U. S. 543, 561; Mississippi Railroad Comm. v. Ill. Cent. Ry. Co., 203 U. S. 344, 346; Atlantic Coast Line v. Wharton, 207 U. S. 334; Herndon v. Chicago Railway Co., 218 U. S. 135, 156; Chicago Railway Co. v. Wisconsin Railroad Comm., 237 U. S. 226; Delaware Railway Co. v. Van Santwood, 216 Fed. 252·

*R. Perry Spencer,* General Counsel, and *James D. Lindsay,* Assistant Counsel, for respondent.

(1)  The order is valid, because its enforcement requires appellant, in the most practical way, to furnish the additional service needed to give that adequate and convenient service, not otherwise provided, which the conditions shown in the record call for as reasonable and necessary.  (2)  An order requiring the stopping of an interstate train at a station where adequate and convenient facilities are not otherwise afforded, is not an unauthorized interference with interstate commerce, and particularly so when the interstate train can make the stop without substantial interference with its running schedule.  Lake Shore & Michigan So. Railroad v. Ohio, 173 U. S. 285; Mississippi Railroad Co. v. Illinois Central, 203 U. S. 335; Atlantic Coast Line v. Wharton, 207 U. S. 328; C., B. & Q. v. Railroad Comm., 237 U. S. 220; Gulf, Colorado & Santa Fe v. Texas, 246 U. S. 58; State ex rel. Mo. Pac. Ry. v. Comm., 273 Mo. 632; State ex rel. M., K. & T. Ry. v. Comm., 277 Mo. 175; State ex rel. St. Louis-San Francisco Ry. Co. v. Comm., 235 S. W. 131; St. Louis-San Francisco Ry. Co. v. Pub. Serv. Comm., 254 U. S. 535.

REEVES, C.—This appeal challenges the validity of an order of the Public Service Commission requiring appellant to stop two of its interstate passenger trains at Festus, for the purpose of taking on and discharging passengers.  The order was made upon complaint of the citizens of Festus and, upon review in the Circuit Court of Cole County, the order was sustained.

The plaintiff charged inadequate service between Festus and St. Louis, alleging that citizens desiring to go to St. Louis could not reach there before eleven o'clock a. m., under the then existing schedules, and must leave St. Louis at four p. m., to return to Festus, if a return trip were made on the same day.

Appellant answered that it was then operating four regular passenger trains daily through the town of Festus, two north-bound and two south-bound; that each

stopped to receive and discharge passengers, and that the two trains in controversy, one north-bound and one south-bound, stopped regularly at Crystal City, one mile south of Festus. It was further alleged in the answer that said trains were fast through interstate trains operated between the city of St. Louis, Missouri, and the city of Memphis, Tennessee; that said trains were operated upon as fast a schedule as consistent with safety, for the purpose of making connections at St. Louis and Memphis with connecting lines for the interchange of interstate passengers and express traffic and handling of the United States mails; that in order to enable said trains to maintain their schedules and make such connections, it was necessary to eliminate the stops previously made at Festus, and that a requirement to stop said trains at Festus "would directly burden and interfere with interstate commerce and be in conflict with Section 8 of Article 1 of the Constitution of the United States," and, moreover, it would violate Section 21 of Article 2 of the Constitution of Missouri, by taking property for public use without compensation; that it would violate Section 30 of Article 2 of the Constitution of Missouri by depriving appellant of its property without due process of law, and, for the same reason, would violate Section 1 of Article 14 of the Amendments to the Constitution of the United States.

The testimony showed that prior to May 23, 1920, these trains had stopped "on flag" at Festus, and that several passengers were received and discharged daily; that a larger number was usually received on Monday mornings for St. Louis, and in like manner a larger number discharged on Friday evenings, due to week-end visits at Festus. Under the former schedules of said trains, passengers could leave Festus at 6:25 in the morning and arrive at St. Louis at 7:55 of the same morning, and returning could leave St. Louis at nine o'clock in the evening and arrive at Festus one hour and twenty minutes later, thus affording a longer time for the transaction of business at St. Louis by persons

residing in Festus and desiring to visit in St. Louis and return the same day.

On the part of the appellant it appeared that Crystal City and Festus were adjoining towns; that there was a concrete sidewalk from Festus to appellant's depot at Crystal City; that the greatest distance any inhabitant of Festus would have to cover to reach appellant's depot at Crystal City would not exceed two miles, and measuring from the business section of Festus it would be one mile; that the depot at Crystal City was only one mile distant from the depot at Festus; that appellant was required to make an operating stop at Crystal City on account of the intersection of another railroad, and to take water; that there were means of transportation by automobile and "jitney" from Crystal City to Festus, and that the inhabitants of Festus could enjoy the special benefits of the two trains in question by going to the depot at Crystal City.

It was further shown that the congestion of terminal tracks at St. Louis was such that if said northbound train was behind on its schedule, it suffered delay in entering said terminal and missed connection with departing trains for which it carried passengers, and that generally the stop at Festus directly burdened its interstate business both at St. Louis and Memphis. It was further shown that both of said trains were operated on fast schedules; that there was another line of railroad between Memphis and St. Louis with which appellant was a competitor, and such schedules were required to be maintained for the purpose of securing business; that interference therewith would cause appellant to lose such traffic, and the stop at Festus would cause the loss of five- to seven minutes in time, and this was needed to enable appellant to maintain regularity in its schedules.

I.  This proceeding must be treated here as a suit in equity and therefore this court may make its own findings of fact.  [Railroad v. Public Service Commis-

294 Mo.—24

sion, 266 Mo. 333; State ex rel. Wabash Railroad Co. v. Public Service Commission, 271 Mo. 155; State ex rel. Missouri, Kansas & Texas Ry. Co. v. Public Service Commission, 277 Mo. 175.]

**Appellate Practice.**

II. The law has been repeatedly declared that while it is competent for the State to require adequate local facilities, even to the stoppage of interstate trains, yet when local demands are adequately met the obligation of the railroad is performed, and the stoppage of interstate trains becomes · an improper and illegal interference with interstate commerce. [Chicago, Burlington & Quincy, Railroad v. Railroad Commission of Wisconsin, 237 U. S. 220; St. Louis-San Francisco Ry. v. Public Service Commission, 254 U. S. 535.]

**Power of State.**

It is equally as well settled that whereas the State may regulate, yet "the State can do nothing which will directly burden or impede the interstate traffic of the company, or impair the usefulness of its facilities for such traffic." [Illinois Central Railroad v. Illinois, 163 U. S. 142, l. c. 154.]

From the foregoing it must be ascertained whether adequate local facilities were provided by appellant, and whether or not the order imposed by the Public Service Commission directly burdened interstate commerce.

III. It was not controverted that the inhabitants of Festus enjoyed the benefit of two trains to and from St. Louis each day, and that a passenger desiring to go to St. Louis could leave Festus so as to arrive at eleven o'clock in the morning or at 7:55 in the evening, and in returning to Festus he had his option to leave so as to arrive at Festus at 9:18 in the morning or 5:45 in the evening. Furthermore, it appeared from the testimony that another railroad, the Mississippi River & Bonne Terre Ry. Co., afforded two trains each way, so that citizens of Festus had their

**Adequate Facilities.**

option of four different trains into St. Louis and four different trains returning, all of which stopped regularly to receive and discharge passengers.

In addition to this, it was shown that the two trains in question stopped out of necessity at Crystal City, and that the depot there was only one mile distant from the business section of Festus, with streets and sidewalks connecting and with transportation facilities. While it appeared that the jitney or automobile service was inadequate on some occassions, yet for the most part it was not disputed that passengers using the Crystal City depot found means of local transportation.

According to the testimony, Crystal City and Festus are adjoining municipalities and for all practical purposes constituted one continuous city, so that the requirement to stop is based on the theory of separate corporate entities, the maintenance of a depot at each place and a prior schedule. These facts do not argue in favor of local convenience or facilities. Under modern local facilities a distance of a mile or two miles cannot be counted an inconvenience in reaching depots. Few of our modern towns and cities are so planned as to afford all the citizens thereof the convenience of a closer proximity to railroad depots. We must hold, therefore, that the inhabitants of Festus were adequately supplied with facilities for the accommodation of the traveling public and that the stoppage of the trains in question would be simply an addition to ample facilities already provided. [Herndon v. Ry., 218 U. S. 135.]

IV. And in like manner, we must hold that the stoppage of said trains would be a detriment to and hindrance of interstate traffic, and therefore an unlawful regulation and burden upon interstate commerce.

Burden on Interstate Commerce. It appeared that appellant was required to maintain fast schedules because of the rivalry of a competing line and for the purpose of making connections for its interstate pas-

sengers at St. Louis and Memphis, and the time required to make its stops at Festus endangered its schedules and interfered with its traffic. Under such circumstances, interstate commerce was directly burdened and the regulation was not only repugnant to the Constitution of the United States, but to the Constitution of Missouri and therefore void. [Atlantic Coast Line Railroad Co. v. Wharton, 207 U. S. 328, l. c. 334.]

Accordingly the judgment of the circuit court is reversed and the cause remanded with directions to enter a judgment reversing the order of the Public Service Commission, and it is so ordered. *Railey, C.,* concurs; *White, C.,* not sitting.

PER CURIAM:—The foregoing opinion by REEVES, C., is adopted as the opinion of the court. All of the judges concur. *David E. Blair, J.,* in Paragraphs 2 and 3 and the result.