THE STATE ex rel. ST. LOUIS WATER COMPANY, Successor to WEST ST. LOUIS WATER & LIGHT COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION OF STATE OF MISSOURI and CITY OF KIRKWOOD.—291 S. W. 788.

### Division One, February 16, 1927.

1. **WATER RATES: Findings by Commission.** In a statutory proceeding to review an order of the Public Service Commission fixing water rates, the court is not bound by its findings, but may determine for itself questions of fact from the evidence before the Commission.

2. ———: **Prima-Facie Reasonable.** By virtue of the statute (Secs. 10534, 10535, R. S. 1919) water rates fixed by the Public Service Commission are prima-facie reasonable and lawful, and the burden of showing them unreasonable and unlawful is upon the party seeking to annul or set them aside.

3. ———: **Contrary to Contract.** Water rates fixed by an unexpired contract between a city and a water company are subject to change by the Public Service Commission.

4. ———: **Valuations of Properties: Eliminated from Case.** The water company furnished service to numerous cities and communities in the county, owning distribution systems in the most of them, but the city of Kirkwood owned its distribution system, and the company supplied water to it at the city limits. The Public Service Commission found the fair present value of the whole property of the company, and the fair present value of that portion of its property used and useful in supplying water to Kirkwood, and made an order fixing water rates in the city on the basis of these valuations. Upon a writ of review the circuit court set aside the order on various grounds, among others, that these valuations were excessive and unreasonable, and the rates an unjust discrimination against Kirkwood. The company appeals to this court, but the city is not represented, and it appears that since the order was made the city has installed its own intake works, and ceased to be a customer of the water company. **Held,** that the city is not concerned, and need not be considered, in the revaluations now being made by the Commission, and it is not necessary to decide whether the Commission made no allowance for going-concern value, or whether the valuations of the property of the company as a whole was excessive or unreasonable, or whether, in fixing the rate to be paid by Kirkwood, the Commission made a proper and reasonable apportionment and valuation of the portion of the property devoted to the service of that city.

5. **DISCRIMINATION: Apportionment of Properties and Operating Expense.** The water company supplied water to numerous cities and communities in the county, owning distribution systems in the most of them, but two cities, Kirkwood and Webster Groves, owned their own distribution systems, taking water at the city limits. **Held,** that, in an effort to apportion a valuation of the property and the expense of operation, to impose on

Kirkwood any part of the loss caused by the assessment of an inadequate water rate against Webster Groves would be a discrimination. But if the rate given to Kirkwood was not unreasonable, in view of the value of the property devoted to its service and its proper share of the operating expenses, and the water company was made to· bear whatever loss would accrue to Webster Groves, there was no such discrimination as avoided the order.

Corpus Juris-Cyc. References: **Waters**, 40 Cyc., p. 797, n. 41 New; p. 800, n. 61 New; p. ˙801, n. 71 New, 72 New.

Appeal from Cole Circuit Court.—*Hon. Henry J. Westhues*, Judge.

Reversed and remanded.

*Charles M. Polk* for appellant.

(1) No Missouri city of the fourth-class may legally enter into a contract with a public utility company providing for furnishing water for a period of over twenty years. Sec. 8480, R. S. 1919; Dillon on Municipal Corp. p. 2125; McQuillan on Municipal Corp. p. 2722; Somerset v. Smith, 105 Ky. 678; Clay Center v. Clay Center P. & P. Co., 78 Kan. 390; Gas Co. v. City of Albany, 156 Ind. 406; Morrice v. Sutton, 139 Mich. 643; Buffalo Clean Street Co. v. City of Buffalo, 113 App. (N. Y.) 887; Town of Kirkwood v. Meramec Highlands Co., 94 Mo. App. 646. Irrespective of the validity of the ordinance provision for the extension of the contract beyond the twenty-year period, the Public Service Commission had jurisdiction to order an increase of rates for water. State ex rel. Sedalia v. Pub. Serv. Comm., 275 Mo. 201; Kansas City v. Pub. Serv. Comm., 276 Mo. 539. (2) The burden of proving that the rate fixed by the Public Service Commission in this case was unreasonable lies upon Kirkwood. Sec. 10535, R. S. 1919; State ex rel. St. Joseph v. Busby, 274 S. W. 1071. (3) In basing the valuation of the water company upon the investment cost of the five years prior to 1915, the Commission was in error. State ex rel. v. Busby, 274 S. W. 1070. (4) The valuation by the Public Service Commission did not give proper effect to the cost of reproducing the property as of the date of valuation. State ex rel. v. Busby, 274 S. W. 1067; State ex rel. Bell Tel. Co. v. Pub. Serv. Comm., 262 U. S. 276; Bluefield Waterworks & Imp. Co. v. Pub. Serv. Comm., 262 U. S. 679. (5) In making the valuation an allowance should have been made by ·the Commission for going value. In re Springfield Gas Co., 1 Mo. P. S. C. 468; St. Joseph Water Co., P. U. R. 1924 B, 362; Lafayette Tel. Co., 11 Mo. P. S. C. 566; Des Moines Gas Co., v. Des Moines, 238 U. S. 153; In re Omaha Water Co., 218 U. S. 180. (6) The rate for water to be furnished Kirkwood was

based on the cost of the water sold to Kirkwood. This cost was ascertained by determining the parts of the property and its value devoted to the use of Kirkwood and charging a fair return thereon; by determining the operating cost of the water company and charging Kirkwood with the proportion thereof that the water sold to it bore to all the water sold. This was an equitable method of ascertaining the cost and establishing the rate. In re Plainfield Water Co., P. U. R. 1924D, 503; Bangor v. Hussa Canning Co., P. U. R. 1923E, 458; In re Commonwealth Water Co., P. U. R. 1919E, 130.

*L. H. Breuer,* Chief Counsel, and *D. D. McDonald,* Assistant Counsel, for respondent Public Service Commission.

LINDSAY, C.—This is an appeal from a judgment which set aside an order of the Public Service Commission fixing the value, for rate making purposes, of the whole of the property of relator water company, and the value of that part of it used and useful in supplying water to the city of Kirkwood, and establishing rates at which the company should supply water to that city. Pending the appeal, the St. Louis Water Company has succeeded to all the rights of the West St. Louis Water & Light Company, and the present company and its predecessors will be referred to as the water company. The company furnished service to numerous cities and communities in St. Louis County, owning distribution systems in most of them; but, two cities, Kirkwood and Webster Groves, owned their distribution systems, and the company supplied water in wholesale quantities and at wholesale rates to those cities, taken by the cities at the city limits. This action, however, directly concerns only the city of Kirkwood, although the rates and service prescribed by the Public Service Commission applied to the city of Webster Groves, but the latter city was not a party to the proceeding for review.

On November 23, 1901, the predecessor of the present company entered into a contract with the city of Kirkwood under the terms of an ordinance, whereby the company undertook to supply the city with water for all its purposes, at certain rates graduated according to the quantity used. The contract ran for twenty years, with the right granted to the city at the expiration of twenty years to have the contract extended or renewed, for a period of ten years. The city of Webster Groves, in 1902, also entered into a like contract with the water company for a period expiring October 21, 1923, but its contract contained no provision for a renewal. The rate provided in the contract with the city of Kirkwood was $16.66 2/3 per day for 100,000 gallons or less; for water in excess of 100,000 gallons and up to 200,000 gallons per day, 16 2/3 cents for each 1,000 gallons used; and for water in excess of 200,000 gallons per day, 13 2/3 cents for each

1,000 gallons. The contract also specified the pressure to be maintained, and provided for a penalty against the company for failure to maintain a water pressure in accordance with the terms of the contract.

In 1921, the water company, in anticipation of the expiration on November 23, 1921, of the twenty year period of its contract with the city of Kirkwood, filed with the Public Service Commission its application to have classification made of the cities and towns in St. Louis County, which owned their distribution systems, and which purchased their water from the company; asked that a schedule of rates be fixed for such cities, and that rules and regulations concerning the service to them be established. The company in its application asked for a rate of 25 cents per 1,000 gallons of water delivered to said cities. By a later application a rate of 40 cents for 1,000 gallons was asked. The city of Kirkwood filed its protest, setting up the terms of the ordinance, and alleged that the ordinance contract had been extended by it for a further period of ten years; alleged that the proposed rates were contrary to the contract, and that the rates under the contract were just and reasonable and ought not to be increased. The city of Webster Groves filed no formal protest, but appeared at the hearings before the Commission. The Commission suspended the increased rates pending a hearing, entered upon an inquiry, and after the taking of testimony made a report of its findings on August 16, 1922, and made orders based thereon. [12 Mo. P. S. C. R. 513]. The Commission found $2,181,000 to be the fair present value of the whole property of the water company, as of January 1, 1922, for the purpose of fixing just and reasonable rates; found as of that date that the fair present value of that portion of the property of the water company used and useful in furnishing water service to the city of Kirkwood was $76,120, and the fair present value of that portion furnishing water to the city of Webster Groves was $161,700. The Commission, by its order, fixed the rate for water furnished to the city of Kirkwood after September 1, 1922, at 25 cents per 1,000 gallons, and the rate for the city of Webster Groves from and after October 1, 1923, the date of the expiration of the contract, at 21½ cents per 1,000 gallons; and in each instance, provided for a penalty of 5 cents if the city should fail to make payment before the tenth of the month following that in which the service was rendered. It also fixed the minimum pressure to be maintained by the water company. The water company and the city of Kirkwood filed their applications for a rehearing; further testimony was taken by the Commission, and the applications were overruled. Thereafter the water company sued out a writ of review, as did also the city of Kirkwood. The city of Webster Groves did not join in asking for a review. The water company proposed to and did continue to render service to

Webster Groves until October 1, 1923, in accordance with its contract. The cause was submitted upon the record and evidence before the Public Service Commission. The court in rendering judgment setting aside the order of the Commission specified as the grounds therefor: That the Commission overvalued the property of the water company as of January 1, 1922; overvalued the property of said company claimed to have been devoted to the service of the city of Kirkwood; that the allocation by the Commission of property devoted to the service of the city of Kirkwood was too high; that the order fixed too high a rate for water to be delivered to that city; that it provided for an unreasonably low pressure for water delivered to said city; and, that the order discriminated against Kirkwood in the rates fixed for it.

The circuit court, by its judgment, suspended the same pending final determination upon appeal, upon the condition, that if an appeal should be taken, the water company should give a bond conditioned for the repayment to the city of the excess collected; and by further order the court required that the difference between the new rate and the old rate, paid by the city, should be impounded, and placed monthly as a special trust fund in the Central Missouri Trust Company at Jefferson City, pending determination upon appeal, said fund then to be ordered paid to the city, or to the water company as might be determined upon final judgment.

In this statutory proceeding of review it has been held that this court is not bound by the findings made by the Public Service Commission, but may determine for itself questions of fact from the evidence before the Commission. [State ex rel. Ozark P. & W. Co. v. Public Serv. Comm., 287 Mo. 522; State ex rel. St. Louis Ry. Co. v. Public Serv. Comm., 294 Mo. 364; State ex rel. Case v. Commission, 298 Mo. 303.] But, it was also held that in these proceedings, by virtue of the provisions of Sections 10534, 10535, Revised Statutes 1919, rates fixed by the Commission are prima-facie reasonable and lawful, and the burden of showing them to be unreasonable and unlawful is upon the party seeking to annul or set them aside. [State ex rel. City of Harrisonville v. Public Serv. Comm., 291 Mo. 432; State ex rel. City of St. Joseph v. Busby, 274 S. W. 1067.]

The city of Kirkwood is not represented in this court. It is not necessary to notice except in a brief way the contention of the city, made before the Commission, that by the extension of the term of the contract, the rates therein provided were not subject to change by the Commission. That question is settled adversely to the contention of the city in numerous cases. [State ex rel. Sedalia v. Commission, 275 Mo. 201; City of Fulton v. Commission, 275 Mo. 67; City of St. Louis v. Commission, 276 Mo. 509.]

In 1915, upon complaint of certain residents of St. Louis County against the rates and regulations of the water company, the Commission, in order to determine the questions raised, held a hearing and fixed the value of the property of the company as of June 1, 1915, as a basis for fixing reasonable and just rates, and also considered the rates and regulations brought in question. It fixed the fair value as of the date mentioned, at $1,625,000. ]See Pine Lawn v. West St. L. Co., 4 Mo. P. S. C. 162.] Upon a review proceeding brought by the company the action of the Commission was sustained by the circuit court. The company appealed from that judgment, assailing, however, not the rates and regulations fixed, but only the valuation, which it claimed was too low. This court (W. St. L. W. & L. Co. v. Commission, 197 S. W. 340) affirmed the judgment of the circuit court, upon the ground that under the circumstances the question of correctness of the valuation was one not necessary to be reviewed, and was but a moot question. Upon the hearing of the application in the present case, the Commission took the valuation made in 1915 as a basis. In that proceeding it had estimated and determined, upon the report of its engineers, that the construction cost of the property of the company was $1,584,444. Proceeding from that, the Commission ascertained the additions which had been made since the former valuation, and the increase in land values; and took into consideration the increased depreciation and other items. In working out the problem the Commission adopted and applied a formula designated by it as the Hutcheson formula, employed by Judge Hutcheson in Galveston Electric Co. v. City of Galveston, 272 Fed. 147. That was a case which afterward went upon appeal, to the Supreme Court of the United States (258 U. S. 388), where although there was no express approval of the formula, the decision of the district court was affirmed. The tabulated statement made by the Commission under that formula as applied in this case is set out in its report and is as follows:

"Estimated construction cost, P. S. C. Engr's.
  report, 4 Mo. P. S. C. 180, (land included at
  its market value in 1915) ........................$1,584,444.00
"Meters which company was required to purchase ....    55,000.00
"Increase in land value, deduced from Alvord's
  1921 appraisal ................................    46,000.00
"Additions to property, 1915-1921, inclusive ........   308,366.00
                                                     ─────────────
                    Total            $1,993,810.00

"Deduct:

| | | |
|---|---:|---:|
| "Materials and supplies .............. | 16,000.00 | |
| "Cash working capital ............... | 20,000.00 | |
| "Additions, 1915-1921 ............... | 308,366.00 | 441,735.00 |
| | | $1,552,075.00 |
| "Add 33⅓ per cent ............................ | | 517,358.00 |
| "Restore deduction above ...................... | | 441,735.00 |
| | | $2,511,168.00 |
| "Deduct accrued depreciation .................... | | 330,515.00 |
| | | $2,180,653.00 " |

After the making of the order of the Commission here involved, the decision of the Supreme Court of the United States in Southwestern Bell Telephone Co. v. Public Service Commission, 262 U. S. 276, was rendered, which reversed the judgment of this court (233 S. W. 425). In its discussion in that case (262 U. S. 287) the court said: "Obviously the Commission undertook to value the property without according any weight to the greatly enhanced cost of materials, labor, supplies, etc., over those prevailing in 1913, 1914, and 1916. As a matter of common knowledge these increases were large. Competent witnesses estimated them as 45 to 50 per centum." Further on it was said: "It is impossible to ascertain what will amount to a fair return upon properties devoted to public service without giving consideration to the cost of labor, supplies, etc., at the time the investigation is made. An honest and intelligent forecast of probable future values, made upon a few of all the relevant circumstances is essential. If the highly important element of present costs is wholly disregarded such a forecast becomes impossible. Estimates for tomorrow cannot ignore prices of today." The Commission in the valuation of the water company in 1915, took an average of prices of labor and materials over a five-year period. Tables of prices of cast iron pipe, showing prices over a long period of years, were introduced in evidence, showing an increase in prices prevailing at the time of and recently before the hearing of more than 50 per cent over prices of the pre-war period. The water company put in evidence an inventory of the whole of the property, and appraisals of the property made by consulting engineers. The appraisal made by them upon the basis of prices before the World War, that is, of cost of reproduction less depreciation, was $2,529,295, and of cost of reproduction less depreciation under the peak prices following the World War was $5,715,502. Their appraisal of the fair present value of the property, as of the date mentioned, was $3,803,000. The consulting engineer for

the city of Kirkwood estimated the fair present value of the whole property at $1,800,000. Upon the motion for a rehearing, the Commission found that it had made an error of $55,900 in its finding of the cost of iron pipe, and had made an error in the amount of the item to cover cost of materials and supplies; but, it concluded that the items mentioned did not warrant a disturbance of the rate base value of $2,181,000 theretofore determined upon the hearing. In support of and illustrating the grounds of its conclusion, it set forth the following table of items:

"Estimated construction cost, P. S. C. Engr's.
  report, 4 Mo. P. S. C. 180:
    (Land included at its market value in 1915) ........$1,584,444.00
"Meters which company was required to purchase ....     55,000.00
"Adjustment account cast iron pipe ................     55,900.00
"Additional materials and supplies .................      9,000.00
"Additionals to property, 1915-1921, inclusive ........   308,366.00
"Increased land value ..........................     46,000.00
                                                    _____
        "Total                              $2,058,710.00"

It is urged in the brief for the water company that the Commission made no allowance for going-concern value—that is, that "element of value in an assembled and established plant, doing business and earning money, over one not thus advanced." [Des Moines Gas Co. v. Des Moines, 238 U. S. 165.] Expressions of this court as to the right to allow something for going value may be found in State ex rel. Case v. Commission, supra, and in State ex rel. St. Joseph v. Busby, 274 S. W. l. c. 1069. But, we think it is not necessary under the status of this case to go into a discussion of the subject of going-concern value as an element, nor to attempt to discuss the question of the amount, if any, which should be allowed on that account by the Commission. It is stated in the brief of counsel that since the making of the valuation under consideration, and since the announcement of the rule in the State ex rel. Southwestern Bell Telephone Co. case, the Commission has ordered a revaluation of the property of this company, which revaluation is being made by the engineers and the auditors of the Commission. And, it is further stated that the city of Kirkwood installed its own intake works in December, 1923, and then ceased to be a customer of the water company. That city will therefore not be concerned nor need it be considered in the valuation said to be in the making, or in any future rate with this company. The city of Webster Groves took no steps to set aside the order, thereby accepting the rate fixed for that city. Under the circumstances the ultimate and the only question at issue here is whether the money impounded is to be paid to the city of Kirkwood, or to the water company. It is not necessary to go further than to determine whether

under the evidence, and under the rulings in the cases mentioned, the valuation of the property, as a whole, is excessive or unreasonable, and whether, in fixing the rate to be paid by the city of Kirkwood, the Commission made a proper and reasonable apportionment and valuation of the property of the company devoted to the service of that city.

Preparatory to fixing rates for water to be furnished to the two cities the Commission made an apportionment of the property of the water company attributable to the use of each city, respectively, and also a like apportionment of the operating expenses of the company. To do this it ascertained the total quantity of water sold by the company during the year 1921, which was 1,117, 536,622 gallons. Of this Kirkwood used 72,428,690 gallons, and Webster Groves 237,444,750 gallons. During that year Kirkwood used 6.48 per cent of the total, and Webster Groves 21.25 per cent. In determining the value of the property to be apportioned, as to the use of each city, and the amount of operative expense to be attributed, to each city, the Commission used the foregoing percentages, respectively, as applying to most of the items of property and items of expense. Certain items of property were devoted in their use to all customers, and certain others, as the Kirkwood tower and certain mains, were devoted in larger measure to the service of Kirkwood, and similarly, there were operating expenses chargeable not at all, or, in less measure, to the service to Kirkwood. The like conditions applied to Webster Groves. The farther and more particular statements we confine to the apportionments made to Kirkwood. Mr. Alvord, consulting engineer for the water company, made estimates of apportionments as proper for each city. As to Kirkwood he took the total use of water for the five-year period, 1915 to 1921, and apportioned Kirkwood 7½ per cent of the water used, and applied that percentage upon most items of operating expense and items of property and according to his valuation of the property devoted to the use of Kirkwood. He apportioned to Kirkwood property of the estimated value of $186,000 and operating expenses to the amount of $12,551.54. The Commission, in adopting the year 1921 as the standard of total use of water, and of relative use by the two cities, instead of the five-year period, was moved by the fact that Webster Groves had grown more rapidly than Kirkwood, and that in the ten-year period of 1910-1920 the population of Webster Groves had increased 34 per cent, and that of Kirkwood 6 per cent. The Commission therefore adopted the lower percentage of 6.48 per cent and applied it to most items of operating expense, and to most items of property devoted to the use of Kirkwood, and upon the values of those items as determined by it. The Commission then, upon those cases, determined the cost of the water supplied to Kirkwood during the year 1921. In doing so, it determined the cost in

operating expenses attributable to the service to Kirkwood, and the other cost of return over operating expenses, sufficient for depreciation, and a return upon the property so valued and so devoted. It placed the sum for depreciation and return as 9 per cent of the value of the property. In doing this it allowed 1.5 per cent for depreciation, instead of one per cent, and upon the ground that under the rapid increase of population in the territory covered by the company, certain portions of the mains would quickly become obsolete.

The apportionments, of property, and of operating expenses, as made by the Commission to the city of Kirkwood, are shown by the following tables:

"(a)    Apportionment of Property.

| | | Chargeable to Kirkwood. | Kirkwood's share. |
|---|---|---|---|
| "Real estate | $ 61,525 | 6.48% | $ 3,986.82 |
| "Intake works | 18,400 | 6.48% | 1,192.32 |
| "Reservoir, settling basin, filters and clear well | 51,750 | 6.48% | 3,353.40 |
| "Pumping station equipment | 104,650 | 6.48% | 6,781.32 |
| "Stratman Hill reservoir and tower | 21,850 | 6.48% | 1,415.88 |
| "Kirkwood Tower | 9,200 | 75% | 6,900.00 |
| "20" main, station to Stratman | 145,188 | 6.48% | 9,408.18 |
| "12" main, Denny Road to Kirkwood | 52,038 | 50% | 26,019.00 |
| "12" main, Price-Lay Road to Kirkwood | 85,502 | 20% | 17,100.40 |

"Total property assignable to Kirkwood ...............................$76,157.32
"Depreciation and return at 9% on above ............................... 6,854.16

"(b)    Apportionment of Operating Expenses.

| | | Chargeable to Kirkwood. | Kirkwood's share. |
|---|---|---|---|
| "Production | $ 89,256.36 | 6.48% | $ 5,783.81 |
| "Distribution | 8,635.28 | 3.32% | 286.69 |
| "Commercial | 15,116.54 | 65% | 98.26 |
| "New Business | 454.49 | ...... | ........ |
| "General Expenses | 23,278.49 | 6.48% | 1,508.45 |
| "Taxes | 10,490.26 | 6.48% | 679.77 |
| "P. S. C. expense | 3,750.00 | 6.48% | 243.00 |
| "Rental 24" main | 37,670.00 | 6.48% | 2,441.02 |

" $188.651.42                            $11,041.00 "

The Commission, from the foregoing, summarized its estimate of the cost of water supplied to the city of Kirkwood during the year 1921, a cost made up of the sum of the operating expenses to be charged to that city, and the allowance for depreciation and return upon the property so used.

The summary is as follows:

"(c)  Estimated Cost of Water Supplied to Kirkwood.

"Depreciation and return ......................... $ 6,854.16
"Operating expenses .............................. 11,041.00

"Total ......................... ....... 17,895.16

"Gallons used in 1921—72,428,690

"Cost per M gallons, 24.7 cents."

As thus estimated, upon the cost of water used in 1921, that cost being the sum apportioned for operating expenses, and the amount allowed for depreciation and return upon the value of the property used, the estimated cost was three-tenths of one cent per 1,000 gallons, less, than the allowed rate.

There was raised the contention that the order discriminated against the city of Kirkwood, in that, it put in force the increased rates as against that city, but deferred the effect of the increase to Webster Groves until the expiration of the twenty-year ordinance contract between the water company and the latter city.

The Commission concluded that since the city of Kirkwood, by its order, was required to carry only the cost of its own service, and was not required to carry any part of the cost assignable to Webster Groves, and that any loss resulting from the service to Webster Groves, fell upon the water company during the remainder of the term of its contract with that city, there was no discrimination of which the city of Kirkwood could complain. Clearly it would be a discrimination to impose upon the city of Kirkwood any part of the loss caused by the assessment of an inadequate rate against the city of Webster Groves, they being cities in the same class in the sense that both were purchasers of water at wholesale from the company. But, if the rate to Kirkwood was not unreasonable, as we have held, in view of the value of the property devoted to its service, and the proper share of the attendant operating expenses; and the water company bore whatever loss would accrue in its service to Webster Groves, during the remainder of the term of its contract with that city, we are of the opinion there was not thereby a discrimination which avoided the order.

Our conclusion is that the judgment of the circuit court should be reversed, and the cause remanded, and that an order be made for the

payment of the impounded fund to the relator water company. *Seddon, C.*, concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.